# EXHIBIT 3

**From:** Gregory Filosa [gfilosa@twglaw.com]
**Sent:** Monday, September 27, 2010 2:48 PM
**To:** Franco, Shira
**Cc:** Cohen, Guy
**Subject:** Fryer v. OMG/OMD

**Attachments:** V. Fryer - Economic Damages Analysis.PDF
Shira,

Attached please find a copy of the expert report with respect to economic damages prepared by Tinari Economics Group on behalf of Plaintiff. A hard copy, as well as the additional categories of documents and information required by FRCP 26(a)(2)(B), is being forwarded to your attention via regular mail.

**Gregory N. Filosa**
Associate
Thompson Wigdor & Gilly LLP
85 Fifth Avenue
New York,NY  10003
(212) 257-6800 (Main)
(212) 257-6845 (Fax)
gfilosa@twglaw.com
www.twglaw.com


This communication may contain Confidential or Attorney-Client Privileged Information and/or Attorney Work Product. If you are not the addressee indicated in this message or its intended recipient (or responsible for delivery of the message to such person(s)), do not read, copy, or forward this message to anyone and, in such case, please immediately destroy or delete this message, including any copies hereof, and kindly notify the sender by reply e-mail, facsimile or phone. Thank you.

# AN APPRAISAL OF ECONOMIC LOSS
## TO
## VIOLET FRYER

Kristin K. Kucsma, M.A.

and

Frank D. Tinari, Ph.D.

TINARI ECONOMICS GROUP
www.TinariEconomics.com

220 South Orange Avenue
Suite 203
Livingston, NJ 07039
973 / 992-1800  phone
973 / 992-0023  fax

11 Penn Plaza Center
5th Floor
New York, New York 10001
212 / 201-0938  phone
212 / 201-0937 fax

September 22, 2010



# TABLE OF CONTENTS

Certification  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Purpose of Appraisal  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Opinion of Economic Damages . . . . . . . . . . . . . . . . . . . . .  2

Background Facts and Assumptions  . . . . . . . . . . . . . . . .  3

Components of Analysis  . . . . . . . . . . . . . . . . . . . . . . . . .  6

Adjusted Earnings in Past Years  . . . . . . . . . . . . . . . . . .  6

Adjusted Earnings in Future Years  . . . . . . . . . . . . . . . .  8

Compensation for Excess Taxes  . . . . . . . . . . . . . . . . . .  11

Summary  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Appendix of Tables

Qualifications Profiles

Statement of Ethical Principles and Principles of Professional
Practice



## Certification

This is to certify that we are not related to any of the parties to subject action, nor do we have any present or intended financial interest in this case beyond the fees due for professional services rendered in connection with this report and possible subsequent services. Further, we certify that our professional fees are not contingent on the outcome of this matter but are based on the time expended on the services provided to counsel in connection with subject action.

This is to further certify that all assumptions, methodologies, and calculations utilized in this appraisal report are based on current knowledge and methods applied in the determination of projected pecuniary losses.

In addition, this is to further certify that we pledge to abide by the spirit and the letter of the Statement of Ethical Principles and Principles of Professional Practice of the National Association of Forensic Economics, a copy of which is attached to this report.


                                                                   _____
                                                                Kristin K. Kucsma, M.A.


                                                                    _____
                                                                Frank D. Tinari, Ph.D.



FRYER / Thompson Wigdor & Gilly LLP                                        page 2

## Purpose of Appraisal

Tinari Economics Group was retained to evaluate the economic losses suffered by Violet Fryer resulting from alleged wrongful termination. Background facts on this matter were provided to us in a packet of documents. Additional information was obtained subsequent to the initial communications. We have relied on these documents, facts and publicly available documents in developing this appraisal. The respective documents used as a source are duly noted at each point of use in the report.

The purpose of this report, therefore, is <u>to provide a written appraisal of the economic loss to Violet Fryer</u>.

## Opinion of Economic Losses

Within a reasonable degree of economic certainty, and based on the analysis contained in this report, it is our professional opinion that the total present value of the economic loss sustained by Mrs. Fryer amounts to between

**THREE HUNDRED FIFTY-FOUR THOUSAND,
NINE-HUNDRED FIFTY-TWO DOLLARS**

**[ $354,952 ]**

**and**

**ONE MILLION,
SEVENTY-THREE THOUSAND,
SEVENTY-ONE DOLLARS**

**[ $1,073,071 ]**

The range of loss is a function of the future time period of loss that the trier-of-fact may find appropriate. Further, our valuation does not take into account the ramifications of intangible, non-economic losses such as human suffering or emotional feelings that may have been suffered by plaintiff or plaintiff's family members.



FRYER / Thompson Wigdor & Gilly LLP                                           page 3

## Background Facts and Assumptions

1) Plaintiff:                    Violet Fryer; female
2) Born:                         February 20, 1973
3) Residence:                    Wilton, Connecticut
4) Education:                    Bachelor's degree
5) Prior health:                 good
6) Former employer:              OMD USA LLC, a unit of Omnicom Media Group
7) Former position:              associate research director
8) Hired:                        November 17, 1997
9) Employment terminated:        on or about June 10, 2009
10) Current status:              unemployed
11) Spouse:                      David (born: 11/11/71)

12) Life expectancy: as of the date of termination, females of plaintiff's age (36.30 years) live, on average, an additional 45.50 years. [SOURCE: *National Vital Statistics Reports,* Volume 58, No. 21, United States Life Tables, 2006, Table 3, June 28, 2010, http://www.cdc.gov/nchs/data/nvsr/nvsr58/nvsr58_21.pdf.] Therefore, females in plaintiff's statistical cohort have an expected total life span averaging 81.80 years, implying a statistical date of death of December 9, 2054.

13) Occupation and employment history: at the time of her termination, plaintiff was employed full time as an associate research director for OMD USA, LLC (hereafter, OMD) in New York, New York. Plaintiff began her employment with OMD on or around November 17, 1997. In 2001, plaintiff was promoted from senior research analyst to research manager. In 2007, she became associate research director. Mrs. Fryer reportedly worked an average of 45 hours per week but was exempt from overtime. Plaintiff alleges that she was demoted and stripped of responsibilities in about August 2008 when she notified the company of her pregnancy (second child) and need to take corresponding maternity leave. The maternity leave reportedly spanned November 2, 2008, to February 2, 2009. It is reported that Mrs. Fryer was wrongfully terminated on or about June 10, 2009. [SOURCES: responses to Tinari Economics Group Fact-Finding Questionnaire (FFQ); and Second Amended Complaint, dated May 18, 2010.]

We have been informed that plaintiff has been unemployed since her employment termination. She has reportedly been collecting unemployment benefits since June 15, 2009. As of June 15, 2009, her weekly benefit amounted to $405. [SOURCES: Statement



from the New York Department of Labor, dated September 1, 2010; and FFQ.] Unemployment compensation amounts are provided for informational purposes only.

14) Earnings history: plaintiff's earnings are presented in the table below. It is reported that plaintiff received full pay while on maternity leave. [SOURCES: plaintiff's W-2 Wage and Tax statements; Complaint, *op. cit.*, electronic mail from counsel, September 13, 2010; and pay stub dated June 15, 2009.]

| Year | OMD |
|------|------|
| 2006 | $  91,387 |
| 2007^ | 99,572 |
| 2008^^ | 102,272 |
| 2009* | 49,159 |
| 2010 | 0 |

^ returned to work in April following maternity leave for first child
^^ maternity leave for second child: November 2, 2008, to February 2, 2009
* employment terminated on June 10

15) Pre-termination earnings base: we establish plaintiff's pre-termination earnings at $102,272 in 2008 dollars based upon her last full year of earnings prior to termination.

16) Pre-termination fringe benefits: plaintiff reportedly received various fringe benefits at OMD including family health insurance with prescription coverage, dental insurance, a vision plan, life insurance, long-term disability insurance, and an employee stock purchase and 401(k) plan. [SOURCE: FFQ.]

Plaintiff reportedly did not extend coverage through COBRA after termination. Instead, her family in now covered under Mr. Fryer's employer-provided health insurance plan which costs approximately $150 <u>more</u> per month. [SOURCE: FFQ]. Assuming that the additional $150 per month health insurance cost will continue through the end of December 2010, we calculate plaintiff's out-of-pocket medical expenses at **$2,700**. This figure is included in the past earnings section of this report.



Plaintiff reportedly received the following employer-match amounts for the OMD 401(k) plan: $2,800 (2004), $5,454 (2005), $6,300 (2006), $5,537 (2007), $4,040 (2008), and $4,280 (2009). We have calculated these amounts as a percentage of the corresponding annual earnings figures for plaintiff and averaged those percentages at 5.5%. [SOURCE: electronic mail from counsel dated September 13, 2010, averages calculated by author.]

Given the prospective nature of insurance, we value fringe benefits in past years based upon the employer contribution to plaintiff's 401(k) account (5.5%) and reported out-of-pocket health insurance costs ($2,700). For future years, we value fringe benefits at a total of 7.3% of earnings based upon 1.8% for the reported additional cost for post-termination health insurance and 5.5% for the employer 401(k) contribution.

17) Excess tax on lump-sum award: it is important to recognize that a lump-sum award received in this matter may be subject to a relatively high income tax bracket on the entire amount in the year in which it is awarded. As a result, courts have ruled that plaintiffs are entitled to recover the excess taxes that would be incurred. In *O'Neill v. Sears Roebuck & Co.*, it was ruled that a plaintiff award is entitled to a court-ordered enhancement in order to compensate for the "negative tax consequences" of receiving, in a single year, a lump-sum award for back pay and front pay. The judge in a Washington Court of Appeals case, *Blaney v. Int'l Assoc'n Of Machinists and Aerospace Workers*, concluded that adverse federal income tax consequences "are within the scope of the term 'actual damages.'" In a New Jersey case, *Ferrante v. Sciaretta*, Judge Bernhard ruled that the adverse tax consequences of a lump-sum award of economic losses should be included as compensatory losses under the scheme of the New Jersey Law Against Discrimination. [SOURCES: *O'Neill v. Sears Roebuck*, 108 F. Supp.2d 443 (E.D.Pa.2000); *Blaney v. Int'l Assoc'n Of Machinists and Aerospace Workers*, 114 Wn.App. 80, 55 P.3d 1208 (2002); and *Ferrante v. Sciaretta*, 365 N.J. Super. 601 (Law Div. 2003).] This enhancement, or gross-up, recognizes and is in compliance with the "make-whole" doctrine set forth by the 3rd U.S. Circuit Court of Appeals 1995 decision in *Starceski v. Westinghouse Electric Corporation.*

Having established that compensation for any excess taxes is part of the award necessary to make plaintiff whole, the judge in *Ferrante* also clarified that the amount of excess taxes cannot be calculated until after the trial.

In light of the *Ferrante* decision, we calculate excess taxes in this report as a separate component of the loss for the purpose of facilitating settlement discussions. However, if



FRYER / Thompson Wigdor & Gilly LLP                                    page 6

the court permits, we are prepared to testify about the nature and magnitude of the excess taxes at trial. Or, if the pertinent post-trial application is made, we also stand ready to project post-award excess taxes.

## Components of Analysis

The pecuniary value of loss to plaintiff is estimated by consideration of the following components:

1. adjusted earnings in past years
2. adjusted earnings in future years
3. compensation for excess tax on lump-sum award

Each of these components is analyzed separately in the following sections of this appraisal report.

## Adjusted Earnings in Past Years

The earnings loss consists of the earnings plaintiff would have most likely generated had she continued to work for OMD. We make our calculations in this section from the date of termination to the end of December 2010.

A yearly increase of 2.4%, reflecting estimated and projected nationwide wage growth for all occupations in 2009, is used to project earnings for 2009 and 2010. [SOURCE: U.S. Department of Labor, Bureau of Labor Statistics, Occupational Employment Statistics (OES), Median Hourly Earnings, all occupations, http://www.bls.gov/oes, percentages calculated by author.]



FRYER / Thompson Wigdor & Gilly LLP                                    page 7

| Year | Projected Gross Earnings [@ 2.4%] |
|------|------|
| 2008 | $ 102,272 |
| 2009 | 104,727 |
| 2010 | 107,240 |

Gross earnings are adjusted to take into account several factors that help determine adjusted earnings.

As a result of case law, IRS rulings and legislation, economic losses awarded in wrongful termination cases are fully subject to income tax liabilities. [SOURCE: *Gray v. Commissioner,* CA 10, No. 96-9006, 1/13/97.] The Small Business Job Protection Act of 1996 states that only settlements or awards originating in physical injury or physical sickness claims are excludable from income taxes. All other damage awards are taxable, including claims filed under federal statutes such as the Age Discrimination in Employment Act. Therefore, no adjustment is made to account for this liability in the present analysis, because to do so would unduly penalize the plaintiff, as income taxes will have to be paid on any back/front pay award received in this matter.

An adjustment to earnings losses also takes into account the value of fringe benefits. As stated in the Background Facts and Assumptions section, plaintiff's pre-termination fringe benefits are valued at 5.5% and 7.3% of gross earnings in past and future years, respectively.

The preceding adjustments are summarized algebraically as shown below.

|  | Past Years | Future Years |
|------|------|------|
| Gross Earnings Base | 100.00% | 100.00% |
| x (1 + 5.5%, 7.3%, fringe benefits) | 105.50% | 107.30% |
| = Adjusted Earnings Factor | 105.50% | 107.30% |

Using the information previously cited in this report, the total value of past adjusted earnings losses through the end of December 2010 is derived in the following table:



FRYER / Thompson Wigdor & Gilly LLP                                    page 8

| Year (1) | Portion of Year (2) | Gross Earnings (3) | Adjusted Earnings [(2) x (3) x 105.5%] (4) |
|---|---|---|---|
| 2009 | 56% | $  104,727 | $      61,872 |
| 2010 | 100% | 107,240 | 113,138 |
| out-of-pocket expenses: | | | 2,700 |
| total: | | | $    177,711 |

### Adjusted Earnings in Future Years

To calculate plaintiff's earnings loss in future years, we extend the pre-termination earnings projections from the previous section into future years. Plaintiff's pre-termination earnings are established at $107,240 in 2010 dollars.

Cumulative loss calculations are made through one (1) and six (6) future years. This method reflects our understanding that, with respect to front pay or future lost earnings, courts allow claims for a "reasonable" period of time. The underlying theory is that a job seeker may experience a time lag in obtaining a replacement job, or that, even if a replacement job is found, that it may pay less than the former job. If it pays less, the job seeker may continue to search until a job is obtained that fully offsets the earnings from the earlier employment. All of this may take some years to accomplish. Thus, we present cumulative potential losses through 2016 for the trier-of-fact to consider. In light of all of the evidence that will be heard, the trier of fact in this matter would be expected to determine a reasonable period of time over which future losses may be assumed to continue.

To project plaintiff's pre-termination gross earnings in future years, we utilize an annual compound yearly increase of 3.4%, based on recent and expected wage growth economy-



FRYER / Thompson Wigdor & Gilly LLP                                    page 9

wide[1] for the time period of future losses. [SOURCES: U.S. Department of Labor, Bureau of Labor Statistics, Occupational Employment Statistics (OES), Median Hourly Earnings, All Occupations, http://www.bls.gov/oes, percent calculated by author, and Principal Economic Assumptions, *2010 Annual Report to the Board of Trustees of the Federal Old-age and Survivors Insurance and Disability Insurance Trust Funds*, Table V.B1, http://www.socialsecurity.gov/OACT/TR/2010/ V_economic.html#188118.]

The projected adjusted earnings loss represents lost future cash flows that, but for the termination, plaintiff would have continued to receive each year through 2016. Regarding future projected losses, it is possible to set aside a lump-sum monetary amount at the present time such that the annual flow of interest earnings from it plus a part of the principal would generate the equivalent cash flow associated with lost financial sums projected for each successive year under consideration. Furthermore, money has a time value. Cash flows associated with pecuniary losses expected to be suffered at some future point in time are worth less in today's dollars due to the fact that had the monies been received today, they could have accumulated additional monies in the form of interest. It is possible, therefore, to determine how much money an individual must receive today so he would, by converting that money into an interest bearing asset, be left with a total amount of money in future years equivalent to cash flows that, but for the termination, he would have received in future years. To calculate the required lump-sum amount in this case, it is necessary to compute the present value of future projected losses. To do so requires that we establish a reasonable interest rate factor which is referred to as a discount rate.

The tax-free return on high-grade municipal bonds serves as the basis of our discount rate. Over the past 5 years, the yield on high-grade municipal bonds of varying maturities has averaged 4.51%. Over the past 10 years, it has averaged 4.79%, and over the past 20 years, the yield has averaged 5.41%. [SOURCE: Bond Yields and Interest Rates, 1929-2009,

---

[1] The yearly increase of 3.4% is an overall compound growth rate that encompasses two assumptions. The first is that wage growth in the next three years is likely to reflect the immediate past three years which have been characterized by weak labor markets. Accordingly, we assume 2.6% annual wage growth from 2010 to 2013 (based on historical wage growth from 2007 through 2010). Wage growth after 2013 is best approximated by reference to the wage rate projections found in the Board of Trustees report cited above. Thus, we use 4.3% annual growth from 2014 through 2019, and 4.0% annual growth thereafter.



FRYER / Thompson Wigdor & Gilly LLP                                                page 10

*Economic Report of the President*, February 2010, Table B-73, http://www.gpoaccess.gov/eop/2010/2010_erp.pdf.] In light of historical municipal bond returns and current financial market trends, we select 4.5% as the appropriate discount rate.

Interest earnings from any award in this case will be subject to future income taxation in each subsequent year. This poses a problem since the award will be, in effect, taxed indirectly when no provision has been made for this tax burden. That is why we assume that any lump-sum award will be used to purchase investment instruments that would provide a flow of nontaxable payments to plaintiff.

As shown in the table on the following page, cumulative future earnings losses are calculated through 2016.

| Year | Portion of Year | Projected Pre-Termination Gross Earnings [@ 3.4%] | Projected Pre-Termination Adjusted Earnings [(2) x (3) x 107.3%] | Present Value [@ 4.5%] | Cumulative Present Value |
|---|---|---|---|---|---|
| (1) | (2) | (3) | (4) | (8) | (9) |
| 2011 | 100% | $ 110,886 | $ 118,981 | $ 113,857 | $ 113,857 |
| 2012 | 100% | 114,656 | 123,026 | 112,659 | 226,516 |
| 2013 | 100% | 118,555 | 127,209 | 111,473 | 337,989 |
| 2014 | 100% | 122,585 | 131,534 | 110,299 | 448,288 |
| 2015 | 100% | 126,753 | 136,006 | 109,138 | 557,427 |
| 2016 | 100% | 131,063 | 140,631 | 107,990 | 665,416 |

Note: **bolded** figures represent one (1) and six (6) years of cumulative loss in future years.



## Compensation for Excess Taxes on Lump-Sum Award

Prior to calculating the additional tax liability, a summary of the components analyzed in this appraisal report is presented in the following table:

| Pre-Tax Award | | | |
|---|---|---|---|
| Future Period | Earnings in Past Years | Earnings in Future Years | Pre-Tax Award [(2) + (3)] |
| (1) | (2) | (3) | (4) |
| One Year | $ 177,711 | $113,857 | $291,568 |
| Six Years | 177,711 | 665,416 | 843,127 |

The normal income tax liability on each year's annual earnings would have been less than the tax liability imposed on a single lump sum representing past earnings losses combined with the present value of the stream of future annual earnings losses. Therefore, the lump-sum award imposes an additional and unintended tax liability on the plaintiff. Thus, it is appropriate to include this additional or excess tax liability as an element of damages in order to ensure plaintiff is made whole.

To calculate the additional tax liability, we follow a four-step process. First, we estimate the plaintiff's after-tax but-for income award based on the income tax liability plaintiff would have incurred on her annual earnings. Second, we estimate the income tax liability plaintiff would incur in the year in which a lump-sum award is made. Third, we calculate the appropriate award based on the after-tax award amount from step one, adjusted for the additional compensation needed to offset the tax liability imposed on a lump-sum award, determined in step two. Fourth, we subtract the pre-tax award amount from the appropriate award to derive the additional or excess taxes for which plaintiff would need to be compensated, and include that figure in the Summary section of the appraisal report.

1. Income Tax Liability Estimates: Annual Income

We have reviewed plaintiff's 2007 and 2008 federal and state (Connecticut - CT) income tax returns. Based on the income tax liabilities in those years, we estimate plaintiff's pre-termination effective federal income tax liability for plaintiff's household at 14%, which we raise by an estimated 2% to account for Connecticut state income taxes. This results



FRYER / Thompson Wigdor & Gilly LLP                                      page 12

in a total combined effective tax rate of 16% of earnings. [SOURCES: plaintiff's federal and state income tax returns, 2007 and 2008.]

Accordingly, based on appropriate tax rates, the pre-termination after-tax award is calculated as follows:

| Future Period | Pre-Tax Award | Combined Effective Tax Rate | After-Tax Award [Pre-tax Award @ {1 - (3)}] |
|---|---|---|---|
| (1) | (2) | (3) | (4) |
| One Year | $ 291,568 | 16% | $ 244,917 |
| Six Years | 843,127 | 16% | 708,227 |

2. Income Tax Liability on Lump-Sum Award

To calculate the tax rate on the lump-sum award, we look at the estimated taxable income for plaintiff's household in 2010 absent the award. Based upon a review of the couple's federal income tax return for 2009, we estimate adjusted gross income of about $135,000 for 2010. Assuming deductions and exemptions totaling about $61,000, we estimate taxable income for plaintiff's household of $74,000 in 2010. [SOURCE: plaintiff's federal income tax return for 2009.]

In order to calculate income taxes on the estimated taxable income, we make use of 2009 Federal and Connecticut State tax rate schedules.  We estimate tax rates for a married individual filing jointly. [SOURCES: 2009 Federal Tax Rate Schedules, Internal Revenue Service, United States Department of the Treasury, http://www.irs.gov/; and Connecticut tax rate schedule, www.ct.gov/drs/cwp.]

If plaintiff were to receive an award plus estimated taxable income, we estimate that she would have average total income tax rates as shown in the table below.



**FRYER / Thompson Wigdor & Gilly LLP**                                                  **page 13**

| Future Period | Federal Effective Tax Rate | CT State Effective Tax Rate | Combined Effective Tax Rate |
|---|---|---|---|
| (1) | (2) | (3) | (4) |
| One Year | 27% | 4% | 31% |
| Six Years | 29% | 5% | 34% |

## 3. Estimation of Appropriate Award

The appropriate award (A) is calculated by application of the following formula.

$$A = (w) / (1 - t)$$

where w is the previously calculated after-tax award and t is the average tax rate on the lump sum. [SOURCE: adaptation of Tyler J. Bowles, and W. Cris Lewis, "Taxation of Damage Awards: Current Law and Implications," *Litigation Economic Digest*, Fall 1996, Volume 2, Number 1, pp. 73-77.] Estimation of after-tax wages is based on the actual taxation rate evidenced by recent tax returns and anticipated changes in the plaintiff's taxation profile.

Thus, using the above formula and the preceding information, we calculate the award adjusted for the additional compensation for the tax liability imposed on a lump-sum award as follows:

$$A \text{ (One Future Year)} = (\$244{,}917) / (1 - 0.31)$$
$$= \$354{,}952$$

$$A \text{ (Six Future Years)} = (\$708{,}227) / (1 - 0.34)$$
$$= \$1{,}073{,}071$$

## 4. Additional/Excess Income Taxes

In order to establish the excess tax amounts as a separate component of loss, we subtract the pre-tax award amounts from the appropriate award amount as shown in the following table.



Tinari Economics Group

**FRYER / Thompson Wigdor & Gilly LLP**                                      page 14

| Future Period | Appropriate Award | Pre-Tax Award | Excess Taxes [(2) - (3)] |
|---|---|---|---|
| (1) | (2) | (3) | (4) |
| One Year | $354,952 | $291,568 | $63,384 |
| Six Years | 1,073,071 | 843,127 | 229,944 |



FRYER / **Thompson Wigdor & Gilly LLP** <span style="float:right">**page 15**</span>

## Summary

The preceding findings evaluating the magnitudes of the loss components analyzed in this appraisal report are combined in order to obtain the total present values of loss, as follows:

Future Period of Loss:

| One Future Year | Six Future Years | Component of Analysis |
|---|---|---|
| $177,711 | $177,711 | adjusted earnings in past years |
| 113,857 | 665,416 | adjusted earnings in future years |
| 63,384 | 229,944 | compensation for excess taxes |
| **$354,952** | **$1,073,071** | **present value of total loss** |

It is important to understand that each total loss figure is a present value amount (in 2010 dollars), representing a lump-sum payment needed at present to generate a flow of payments sufficient to compensate for the losses in each year of loss included in this appraisal. In addition, please note that pre-trial or pre-judgment interest has not been calculated. These interest losses are typically determined at the time of trial and would be in addition to the losses calculated in this appraisal report.

The preceding findings are based on information provided to us as of this date. They are subject to revision should additional information be forthcoming that would change any facts or assumptions upon which this analysis rests. We also note that pecuniary losses are an approximation and are provided by the economic expert as a guide to the trier-of-fact. Because a loss stream cannot be computed with absolute confidence, a lump-sum payment represents a "rough and ready" attempt to put the plaintiff in the same position had the alleged discrimination not occurred. [SOURCE: *Jones v. Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 545-47 (1983).]



*APPENDIX*



National Vital Statistics Reports, Vol. 58, No. 21, June 28, 2010     11

Table 3. Life table for females: United States, 2006

| Age | Probability of dying between ages $x$ to $x+1$ <br> $q_x$ | Number surviving to age $x$ <br> $l_x$ | Number dying between ages $x$ to $x+1$ <br> $d_x$ | Person-years lived between ages $x$ to $x+1$ <br> $L_x$ | Total number of person-years lived above age $x$ <br> $T_x$ | Expectation of life at age $x$ <br> $e_x$ |
|---|---|---|---|---|---|---|
| 0–1 | 0.006051 | 100,000 | 605 | 99,467 | 8,020,082 | 80.2 |
| 1–2 | 0.000427 | 99,395 | 42 | 99,374 | 7,920,615 | 79.7 |
| 2–3 | 0.000276 | 99,352 | 27 | 99,339 | 7,821,242 | 78.7 |
| 3–4 | 0.000185 | 99,325 | 18 | 99,316 | 7,721,903 | 77.7 |
| 4–5 | 0.000162 | 99,307 | 16 | 99,299 | 7,622,587 | 76.8 |
| 5–6 | 0.000149 | 99,291 | 15 | 99,283 | 7,523,288 | 75.8 |
| 6–7 | 0.000134 | 99,276 | 13 | 99,269 | 7,424,005 | 74.8 |
| 7–8 | 0.000123 | 99,262 | 12 | 99,256 | 7,324,736 | 73.8 |
| 8–9 | 0.000111 | 99,250 | 11 | 99,245 | 7,225,480 | 72.8 |
| 9–10 | 0.000099 | 99,239 | 10 | 99,234 | 7,126,235 | 71.8 |
| 10–11 | 0.000091 | 99,229 | 9 | 99,225 | 7,027,001 | 70.8 |
| 11–12 | 0.000093 | 99,220 | 9 | 99,216 | 6,927,776 | 69.8 |
| 12–13 | 0.000113 | 99,211 | 11 | 99,206 | 6,828,560 | 68.8 |
| 13–14 | 0.000155 | 99,200 | 15 | 99,192 | 6,729,354 | 67.8 |
| 14–15 | 0.000211 | 99,185 | 21 | 99,174 | 6,630,162 | 66.8 |
| 15–16 | 0.000275 | 99,164 | 27 | 99,150 | 6,530,988 | 65.9 |
| 16–17 | 0.000334 | 99,137 | 33 | 99,120 | 6,431,838 | 64.9 |
| 17–18 | 0.000382 | 99,103 | 38 | 99,085 | 6,332,718 | 63.9 |
| 18–19 | 0.000414 | 99,066 | 41 | 99,045 | 6,233,633 | 62.9 |
| 19–20 | 0.000434 | 99,025 | 43 | 99,003 | 6,134,588 | 62.0 |
| 20–21 | 0.000453 | 98,982 | 45 | 98,959 | 6,035,585 | 61.0 |
| 21–22 | 0.000475 | 98,937 | 47 | 98,913 | 5,936,626 | 60.0 |
| 22–23 | 0.000494 | 98,890 | 49 | 98,865 | 5,837,712 | 59.0 |
| 23–24 | 0.000508 | 98,841 | 50 | 98,816 | 5,738,847 | 58.1 |
| 24–25 | 0.000519 | 98,791 | 51 | 98,765 | 5,640,031 | 57.1 |
| 25–26 | 0.000532 | 98,739 | 52 | 98,713 | 5,541,266 | 56.1 |
| 26–27 | 0.000546 | 98,687 | 54 | 98,660 | 5,442,553 | 55.1 |
| 27–28 | 0.000562 | 98,633 | 55 | 98,605 | 5,343,893 | 54.2 |
| 28–29 | 0.000580 | 98,578 | 57 | 98,549 | 5,245,288 | 53.2 |
| 29–30 | 0.000604 | 98,520 | 59 | 98,491 | 5,146,738 | 52.2 |
| 30–31 | 0.000634 | 98,461 | 62 | 98,430 | 5,048,248 | 51.3 |
| 31–32 | 0.000671 | 98,399 | 66 | 98,366 | 4,949,818 | 50.3 |
| 32–33 | 0.000718 | 98,333 | 71 | 98,297 | 4,851,452 | 49.3 |
| 33–34 | 0.000769 | 98,262 | 76 | 98,224 | 4,753,155 | 48.4 |
| 34–35 | 0.000829 | 98,186 | 81 | 98,146 | 4,654,931 | 47.4 |
| 35–36 | 0.000893 | 98,105 | 88 | 98,061 | 4,556,785 | 46.4 |
| 36–37 | 0.000967 | 98,017 | 95 | 97,970 | 4,458,724 | 45.5 |
| 37–38 | 0.001057 | 97,923 | 103 | 97,871 | 4,360,754 | 44.5 |
| 38–39 | 0.001166 | 97,819 | 114 | 97,762 | 4,262,883 | 43.6 |
| 39–40 | 0.001293 | 97,705 | 126 | 97,642 | 4,165,120 | 42.6 |
| 40–41 | 0.001425 | 97,579 | 139 | 97,509 | 4,067,478 | 41.7 |
| 41–42 | 0.001563 | 97,440 | 152 | 97,364 | 3,969,969 | 40.7 |
| 42–43 | 0.001713 | 97,288 | 167 | 97,204 | 3,872,605 | 39.8 |
| 43–44 | 0.001877 | 97,121 | 182 | 97,030 | 3,775,401 | 38.9 |
| 44–45 | 0.002052 | 96,939 | 199 | 96,839 | 3,678,371 | 37.9 |
| 45–46 | 0.002236 | 96,740 | 216 | 96,632 | 3,581,532 | 37.0 |
| 46–47 | 0.002425 | 96,523 | 234 | 96,406 | 3,484,901 | 36.1 |
| 47–48 | 0.002617 | 96,289 | 252 | 96,163 | 3,388,494 | 35.2 |
| 48–49 | 0.002812 | 96,037 | 270 | 95,902 | 3,292,331 | 34.3 |
| 49–50 | 0.003020 | 95,767 | 289 | 95,623 | 3,196,429 | 33.4 |
| 50–51 | 0.003247 | 95,478 | 310 | 95,323 | 3,100,806 | 32.5 |
| 51–52 | 0.003497 | 95,168 | 333 | 95,002 | 3,005,483 | 31.6 |
| 52–53 | 0.003773 | 94,835 | 358 | 94,656 | 2,910,482 | 30.7 |
| 53–54 | 0.004070 | 94,477 | 384 | 94,285 | 2,815,825 | 29.8 |
| 54–55 | 0.004383 | 94,093 | 412 | 93,887 | 2,721,540 | 28.9 |
| 55–56 | 0.004710 | 93,681 | 441 | 93,460 | 2,627,653 | 28.0 |
| 56–57 | 0.005061 | 93,239 | 472 | 93,003 | 2,534,193 | 27.2 |
| 57–58 | 0.005457 | 92,767 | 506 | 92,514 | 2,441,190 | 26.3 |
| 58–59 | 0.005928 | 92,261 | 547 | 91,988 | 2,348,676 | 25.5 |
| 59–60 | 0.006494 | 91,714 | 596 | 91,416 | 2,256,688 | 24.6 |
| 60–61 | 0.007183 | 91,119 | 654 | 90,791 | 2,165,272 | 23.8 |
| 61–62 | 0.007966 | 90,464 | 721 | 90,104 | 2,074,481 | 22.9 |
| 62–63 | 0.008781 | 89,743 | 788 | 89,349 | 1,984,377 | 22.1 |
| 63–64 | 0.009551 | 88,955 | 850 | 88,531 | 1,895,027 | 21.3 |
| 64–65 | 0.010282 | 88,106 | 906 | 87,653 | 1,806,497 | 20.5 |
| 65–66 | 0.011073 | 87,200 | 966 | 86,717 | 1,718,844 | 19.7 |
| 66–67 | 0.011885 | 86,234 | 1,025 | 85,722 | 1,632,127 | 18.9 |


Tinari Economics Group

National Vital Statistics Reports, Vol. 58, No. 21, June 28, 2010    11

Table 3. Life table for females: United States, 2006

| Age | Probability of dying between ages x to x + 1 $q_x$ | Number surviving to age x $l_x$ | Number dying between ages x to x + 1 $d_x$ | Person-years lived between ages x to x + 1 $L_x$ | Total number of person-years lived above age x $T_x$ | Expectation of life at age x $e_x$ |
|---|---|---|---|---|---|---|
| 0–1 . . . . . . . . . . . . . . . . . . . | 0.006051 | 100,000 | 605 | 99,467 | 8,020,082 | 80.2 |
| 1–2 . . . . . . . . . . . . . . . . . . . | 0.000427 | 99,395 | 42 | 99,374 | 7,920,615 | 79.7 |
| 2–3 . . . . . . . . . . . . . . . . . . . | 0.000276 | 99,352 | 27 | 99,339 | 7,821,242 | 78.7 |
| 3–4 . . . . . . . . . . . . . . . . . . . | 0.000185 | 99,325 | 18 | 99,316 | 7,721,903 | 77.7 |
| 4–5 . . . . . . . . . . . . . . . . . . . | 0.000162 | 99,307 | 16 | 99,299 | 7,622,587 | 76.8 |
| 5–6 . . . . . . . . . . . . . . . . . . . | 0.000149 | 99,291 | 15 | 99,283 | 7,523,288 | 75.8 |
| 6–7 . . . . . . . . . . . . . . . . . . . | 0.000134 | 99,276 | 13 | 99,269 | 7,424,005 | 74.8 |
| 7–8 . . . . . . . . . . . . . . . . . . . | 0.000123 | 99,262 | 12 | 99,256 | 7,324,736 | 73.8 |
| 8–9 . . . . . . . . . . . . . . . . . . . | 0.000111 | 99,250 | 11 | 99,245 | 7,225,480 | 72.8 |
| 9–10 . . . . . . . . . . . . . . . . . . . | 0.000099 | 99,239 | 10 | 99,234 | 7,126,235 | 71.8 |
| 10–11 . . . . . . . . . . . . . . . . . . . | 0.000091 | 99,229 | 9 | 99,225 | 7,027,001 | 70.8 |
| 11–12 . . . . . . . . . . . . . . . . . . . | 0.000093 | 99,220 | 9 | 99,216 | 6,927,776 | 69.8 |
| 12–13 . . . . . . . . . . . . . . . . . . . | 0.000113 | 99,211 | 11 | 99,206 | 6,828,560 | 68.8 |
| 13–14 . . . . . . . . . . . . . . . . . . . | 0.000155 | 99,200 | 15 | 99,192 | 6,729,354 | 67.8 |
| 14–15 . . . . . . . . . . . . . . . . . . . | 0.000211 | 99,185 | 21 | 99,174 | 6,630,162 | 66.8 |
| 15–16 . . . . . . . . . . . . . . . . . . . | 0.000275 | 99,164 | 27 | 99,150 | 6,530,988 | 65.9 |
| 16–17 . . . . . . . . . . . . . . . . . . . | 0.000334 | 99,137 | 33 | 99,120 | 6,431,838 | 64.9 |
| 17–18 . . . . . . . . . . . . . . . . . . . | 0.000382 | 99,103 | 38 | 99,085 | 6,332,718 | 63.9 |
| 18–19 . . . . . . . . . . . . . . . . . . . | 0.000414 | 99,066 | 41 | 99,045 | 6,233,633 | 62.9 |
| 19–20 . . . . . . . . . . . . . . . . . . . | 0.000434 | 99,025 | 43 | 99,003 | 6,134,588 | 62.0 |
| 20–21 . . . . . . . . . . . . . . . . . . . | 0.000453 | 98,982 | 45 | 98,959 | 6,035,585 | 61.0 |
| 21–22 . . . . . . . . . . . . . . . . . . . | 0.000475 | 98,937 | 47 | 98,913 | 5,936,626 | 60.0 |
| 22–23 . . . . . . . . . . . . . . . . . . . | 0.000494 | 98,890 | 49 | 98,865 | 5,837,712 | 59.0 |
| 23–24 . . . . . . . . . . . . . . . . . . . | 0.000506 | 98,841 | 50 | 98,816 | 5,738,847 | 58.1 |
| 24–25 . . . . . . . . . . . . . . . . . . . | 0.000519 | 98,791 | 51 | 98,765 | 5,640,031 | 57.1 |
| 25–26 . . . . . . . . . . . . . . . . . . . | 0.000532 | 98,739 | 52 | 98,713 | 5,541,266 | 56.1 |
| 26–27 . . . . . . . . . . . . . . . . . . . | 0.000546 | 98,687 | 54 | 98,660 | 5,442,553 | 55.1 |
| 27–28 . . . . . . . . . . . . . . . . . . . | 0.000562 | 98,633 | 55 | 98,605 | 5,343,893 | 54.2 |
| 28–29 . . . . . . . . . . . . . . . . . . . | 0.000580 | 98,578 | 57 | 98,549 | 5,245,288 | 53.2 |
| 29–30 . . . . . . . . . . . . . . . . . . . | 0.000604 | 98,520 | 59 | 98,491 | 5,146,738 | 52.2 |
| 30–31 . . . . . . . . . . . . . . . . . . . | 0.000634 | 98,461 | 62 | 98,430 | 5,048,248 | 51.3 |
| 31–32 . . . . . . . . . . . . . . . . . . . | 0.000671 | 98,399 | 66 | 98,366 | 4,949,818 | 50.3 |
| 32–33 . . . . . . . . . . . . . . . . . . . | 0.000718 | 98,333 | 71 | 98,297 | 4,851,452 | 49.3 |
| 33–34 . . . . . . . . . . . . . . . . . . . | 0.000769 | 98,262 | 76 | 98,224 | 4,753,155 | 48.4 |
| 34–35 . . . . . . . . . . . . . . . . . . . | 0.000829 | 98,186 | 81 | 98,146 | 4,654,931 | 47.4 |
| 35–36 . . . . . . . . . . . . . . . . . . . | 0.000893 | 98,105 | 88 | 98,061 | 4,556,785 | 46.4 |
| 36–37 . . . . . . . . . . . . . . . . . . . | 0.000967 | 98,017 | 95 | 97,970 | 4,458,724 | 45.5 |
| 37–38 . . . . . . . . . . . . . . . . . . . | 0.001057 | 97,923 | 103 | 97,871 | 4,360,754 | 44.5 |
| 38–39 . . . . . . . . . . . . . . . . . . . | 0.001166 | 97,819 | 114 | 97,762 | 4,262,883 | 43.6 |
| 39–40 . . . . . . . . . . . . . . . . . . . | 0.001293 | 97,705 | 126 | 97,642 | 4,165,120 | 42.6 |
| 40–41 . . . . . . . . . . . . . . . . . . . | 0.001425 | 97,579 | 139 | 97,509 | 4,067,478 | 41.7 |
| 41–42 . . . . . . . . . . . . . . . . . . . | 0.001563 | 97,440 | 152 | 97,364 | 3,969,969 | 40.7 |
| 42–43 . . . . . . . . . . . . . . . . . . . | 0.001713 | 97,288 | 167 | 97,204 | 3,872,605 | 39.8 |
| 43–44 . . . . . . . . . . . . . . . . . . . | 0.001877 | 97,121 | 182 | 97,030 | 3,775,401 | 38.9 |
| 44–45 . . . . . . . . . . . . . . . . . . . | 0.002052 | 96,939 | 199 | 96,839 | 3,678,371 | 37.9 |
| 45–46 . . . . . . . . . . . . . . . . . . . | 0.002236 | 96,740 | 216 | 96,632 | 3,581,532 | 37.0 |
| 46–47 . . . . . . . . . . . . . . . . . . . | 0.002425 | 96,523 | 234 | 96,406 | 3,484,901 | 36.1 |
| 47–48 . . . . . . . . . . . . . . . . . . . | 0.002617 | 96,289 | 252 | 96,163 | 3,388,494 | 35.2 |
| 48–49 . . . . . . . . . . . . . . . . . . . | 0.002812 | 96,037 | 270 | 95,902 | 3,292,331 | 34.3 |
| 49–50 . . . . . . . . . . . . . . . . . . . | 0.003020 | 95,767 | 289 | 95,623 | 3,196,429 | 33.4 |
| 50–51 . . . . . . . . . . . . . . . . . . . | 0.003247 | 95,478 | 310 | 95,323 | 3,100,806 | 32.5 |
| 51–52 . . . . . . . . . . . . . . . . . . . | 0.003497 | 95,168 | 333 | 95,002 | 3,005,483 | 31.6 |
| 52–53 . . . . . . . . . . . . . . . . . . . | 0.003773 | 94,835 | 358 | 94,656 | 2,910,482 | 30.7 |
| 53–54 . . . . . . . . . . . . . . . . . . . | 0.004070 | 94,477 | 384 | 94,285 | 2,815,825 | 29.8 |
| 54–55 . . . . . . . . . . . . . . . . . . . | 0.004383 | 94,093 | 412 | 93,887 | 2,721,540 | 28.9 |
| 55–56 . . . . . . . . . . . . . . . . . . . | 0.004710 | 93,681 | 441 | 93,460 | 2,627,653 | 28.0 |
| 56–57 . . . . . . . . . . . . . . . . . . . | 0.005061 | 93,239 | 472 | 93,003 | 2,534,193 | 27.2 |
| 57–58 . . . . . . . . . . . . . . . . . . . | 0.005457 | 92,767 | 506 | 92,514 | 2,441,190 | 26.3 |
| 58–59 . . . . . . . . . . . . . . . . . . . | 0.005928 | 92,261 | 547 | 91,988 | 2,348,676 | 25.5 |
| 59–60 . . . . . . . . . . . . . . . . . . . | 0.006494 | 91,714 | 596 | 91,416 | 2,256,688 | 24.6 |
| 60–61 . . . . . . . . . . . . . . . . . . . | 0.007183 | 91,119 | 654 | 90,791 | 2,165,272 | 23.8 |
| 61–62 . . . . . . . . . . . . . . . . . . . | 0.007966 | 90,464 | 721 | 90,104 | 2,074,481 | 22.9 |
| 62–63 . . . . . . . . . . . . . . . . . . . | 0.008781 | 89,743 | 788 | 89,349 | 1,984,377 | 22.1 |
| 63–64 . . . . . . . . . . . . . . . . . . . | 0.009551 | 88,955 | 850 | 88,531 | 1,895,027 | 21.3 |
| 64–65 . . . . . . . . . . . . . . . . . . . | 0.010282 | 88,106 | 906 | 87,653 | 1,806,497 | 20.5 |
| 65–66 . . . . . . . . . . . . . . . . . . . | 0.011073 | 87,200 | 966 | 86,717 | 1,718,844 | 19.7 |
| 66–67 . . . . . . . . . . . . . . . . . . . | 0.011865 | 86,234 | 1,025 | 85,722 | 1,632,127 | 18.9 |



Tinari Economics Group

## Historical Average Returns for AAA-Rated Municipal Bonds
### (percent per annum)

| Year | Average Annual Value for High-grade Municipal Bonds (Standard & Poor's) | Cumulative Average Return* |
|---|---|---|
| 2009 | 4.64 | 4.64 |
| 2008 | 4.80 | 4.72 |
| 2007 | 4.42 | 4.62 |
| 2006 | 4.42 | 4.57 |
| 2005 (5 years) | 4.29 | **4.51** |
| 2004 | 4.63 | 4.53 |
| 2003 | 4.73 | 4.56 |
| 2002 | 5.05 | 4.62 |
| 2001 | 5.19 | 4.69 |
| 2000 (10 years) | 5.77 | **4.79** |
| 1999 | 5.43 | 4.85 |
| 1998 | 5.12 | 4.87 |
| 1997 | 5.55 | 4.93 |
| 1996 | 5.75 | 4.99 |
| 1995 | 5.95 | 5.05 |
| 1994 | 6.19 | 5.12 |
| 1993 | 5.63 | 5.15 |
| 1992 | 6.41 | 5.22 |
| 1991 | 6.89 | 5.31 |
| 1990 (20 years) | 7.25 | **5.41** |
| 1989 | 7.24 | 5.49 |
| 1988 | 7.76 | 5.60 |
| 1987 | 7.73 | 5.69 |
| 1986 | 7.38 | 5.76 |
| 1985 | 9.18 | 5.90 |
| 1984 | 10.15 | 6.06 |
| 1983 | 9.47 | 6.19 |
| 1982 | 11.57 | 6.38 |
| 1981 | 11.23 | 6.55 |
| 1980  (30 years) | 8.51 | **6.61** |

\* arithmetic average

SOURCE: Bond Yields and Interest Rates, 1929-2009, *Economic Report of the President,* February 2010, Table B-73, http://www.gpoaccess.gov/eop/2010/2010_erp.pdf



*Qualifications Profile*

**Kristin Kucsma, M.A.**

KKucsma@TinariEconomics.com
Tinari Economics Group
220 South Orange Avenue, Suite 203
Livingston, NJ 07039
973-992-1800

### Education

ABD in Economics, Rutgers University, New Brunswick, NJ
M.A. in Economics, Rutgers University, New Brunswick, NJ (1993)
B.A. in Economics / English Minor, Seton Hall University, South Orange, NJ, *summa cum laude*
(1991)

### Fields of Specialization

Applied Microeconomic Theory, American Economic History, Monetary History of the United
States, Macroeconomic Theory and Business Cycles, Banking Structure and Regulation

### Honors and Awards

"5.0" Teaching Commendation Award, Stillman School of Business, Seton Hall University, 2003-
04.
Teaching Commendation Award, Stillman School of Business, Seton Hall University, 2002-2003,
2001-2002.
Recognition Award, Educational Opportunity Program, Seton Hall University, 2003
Professor of the Year Award, Alpha Kappa Psi, Seton Hall University, 2002-2003, 2001-2002.
President's Award for Student Services, Seton Hall University, 2001
The Faculty Pirate Pride Award, Seton Hall University, 2000-2001
Feature of Faculty Profile, Seton Hall University Magazine, 2001

### Positions Held

**Economist, Tinari Economics Group, January 2008 - present**

> **Primary responsibilities:** analyze data, prepare reports, and provide expert testimony;
> manage a group of analysts and research assistants and collaborate on the firm's more
> complex cases; perform independent and co-authored research, present at national and
> regional conferences, and serve as an active participant in the field of forensic economics.



**Kristin K. Kucsma, M.A.**

**President, Bull and Bear Consulting, September 2006 - December 2007**
Review portfolios of equities, fixed-income securities and mutual funds for clients; manage financial assets for several high-end clients; advise clients and refer them to specialists regarding long-term care, supplemental health insurance and a variety of trusts including qualified personal residential and generation skipping trusts.

**Lecturer, Department of Economics, Drew University, September 2004 – August 2006**
**Courses Taught:** Money, Banking and the Macroeconomy; Principles of Microeconomics; Principles of Macroeconomics; Intermediate Macroeconomic Analysis; and Mergers and Manias: The Business of Banking

**Faculty Associate, Department of Economics, Seton Hall University, Sept. 1999 - July 2004**
**Graduate Courses Taught:** The National Economy (MBA Level Macro); HUB 1 (Blend of Economics and Corporate Finance); **Undergraduate Courses Taught:** Principles of Microeconomics; Principles of Macroeconomics; Money and Banking; Intermediate Microeconomic Theory; Government and Business; Labor Economics; Small Scale Technology; and Economics in Our Nation's Capital.

**Program Coordinator for Economic History Sessions, Eastern Economic Association, 2005 - 07.**

**Faculty Advisor to Omicron Delta Epsilon, the International Honor Society in Economics, Drew University and Seton Hall University, September 1999 – August 2006**

**Faculty Advisor for the Fed Challenge, Seton Hall University and the Federal Reserve Bank of New York, 2002-2004**
**Co-chair and Project Coordinator for University Retention Committee, Seton Hall University, December 2000 – July 2004**
**Adjunct Lecturer, Department of Economics, Seton Hall University, 1998 – 1999**
**Adjunct Lecturer, Department of Economics, Drew University, 1997 – 1999**
**Instructor, Department of Economics, Saint Peter's College, on-campus as well as at corporate satellite centers, 1995 – 1998**
**Instructor, Department of Economics, Rutgers University, New Brunswick NJ, 1992 – 1995**
**Teaching Assistant, Department of Economics, Rutgers University, New Brunswick NJ, 1991 – 1992**

**Professional Activities**

Member, District Ethics Committee, Office of Attorney Ethics of the Supreme Court of New Jersey, 2010 - present
National Association of Forensic Economics, 2010 - present
Member, Eastern Economic Association, 1997 - present
Member, American Monetary Institute, 2006 - present



# Kristin K. Kucsma, M.A.

Member, Conference Organizing Committee, Eastern Economic Association, 2006

Co-Developer of Revised Business Writing Course, Stillman School of Business, Seton Hall University, 2003 – 04.

Member, CDI-7: Writing Intensive Workshop for Business, Seton Hall University, 2003 – 04.

Designer of Various Question/Answer Duos for Sophomore Assessment, Stillman School of Business, Seton Hall University, 2001 – 2004

> Topics included the "Congested Parks Dilemma", the impact on the US economy of tobacco litigation, issues of market structure with respect to TIVO, the blackout of August 2003 that affected the northeast United States and the Martha Stewart litigation

Guest Speaker, National Council of Negro Women, Seton Hall University, February 2004

## Publications

"Assessing Economic Damages in Personal Injury and Wrongful Death Litigation: The State of New Jersey," co-authored with Frank D. Tinari, *Journal of Forensic Economics*, 21(2), June 2010, pp. 219-234, http://www.JournalofForensicEconomics.com/doi/pdf/10.5085/jfe21.2.219.

"State's Housing Rules Ignore Needs of Immigrants," co-authored with Frank D. Tinari, *Daily Record*, Morris County, NJ, August 30, 2009. (Note: article title is what is available electronically; newsprint copy is titled: "COAH Rules Hurt Immigrants.")

White paper: Is Affordable Housing the Remedy to Perceived Discrimination Against Immigrants?, co-authored with Frank D. Tinari, prepared for the Community Forum on Immigration and Education Issues, convened by the New Jersey State Advisory Committee to the United States Commission on Civil Rights, May 2009.

"COAH Research is Full of Short-comings," co-authored with Frank D. Tinari, *Newark Star-Ledger*, April 1, 2009.

"Companionship, Advice, and Counsel Services," co-author, Section 640 of Chapter 6, The Value of Household Services, of *Determining Economic Damages*, by Gerald D. Martin, Ph.D., Costa Mesa, Ca: James Publishing, Inc., July 2008, pp. 6-7 - 6-11.

Wrote entries for *barter, cost of information, demand, the discount rate, the functions of money, price floors and ceilings and profit maximization* for forthcoming Encyclopedia of Capitalism, Dr. Syed B. Hussain, editor, Golson Books, Ltd.



## Kristin K. Kucsma, M.A.

### Papers Presented

"The Crisis in Economics Education and Its Impact on Political Participation and Economic Growth", The American Monetary Institute Monetary Reform Conference, Chicago IL, September 2006

"A Picture Comes into Focus: A Reexamination of the Crisis of 1877-78", Eastern Economic Association Conference, Philadelphia PA, February 2006

"The Opportunity Cost of Undervaluing Core Concepts in Macroeconomics Courses", Eastern Economic Association Conference, Philadelphia PA, February 2006

"A Framework for Teaching Money and Banking in a Liberal Arts Setting", as part of a panel discussion with Mary Lesser and Steven Cechetti, Eastern Economic Association Conference, New York NY, February 2005

"Portrait of a Panic: The Crisis of 1877", Eastern Economic Association Conference, Washington DC, February 2004

"Betrayed by the FDIC? A Preliminary Examination of the D'Oench, Duhme Doctrine and Its Impact on the Potential Efficiency of Banks in the United States", Eastern Economic Association Conference, New York NY, February 2003

"Celebrating Economics as a Social Science", 14th Annual Conference on Teaching Economics: Instruction and Classroom Based Research at Robert Morris University, Moon Township PA, February 2003

"Deciphering the Mystery of Medieval Debasement", Eastern Economic Association Conference, New York NY, February 2001

### Comments, Notes and Reviews

Review for publisher of Laurence Ball's *Money and Banking* textbook, 2003 - 2004

Referee, "A Test of the Purchasing Power Parity Concept Including the Law of One Price and Its Applicability in International Business", *Journal of Applied Management*, South Orange, NJ 1999



### Kristin K. Kucsma, M.A.

#### Other Conference Activities

Session Organizer for Undergraduate Panel: "Tax Reform in the US: Is A Consumption Tax the Answer?" Eastern Economic Association Conference, Philadelphia PA, February 2006

Discussant for two panels: "Topics in Economic History" and "Teaching and Learning Economics: Achieving Desired Outcomes", Eastern Economic Association Conference, Philadelphia, February 2006

Discussant for two panels: "Personal Behavior: Time, Money, Risk and Trust" and "Lessons From the Past: Money, Trade and Wages", Eastern Economic Association Conference, New York NY, February 2001

Discussant for panel on "Political and Economic Transformations", Northeastern Political Science Association and International Studies Association Conference, Philadelphia PA, November 1999

#### Research Papers

"A Picture Comes Into Focus: A Reexamination of the Crisis of 1877-78", Work in Progress

"The Opportunity Cost of Undervaluing Core Concepts in Undergraduate Macroeconomics Courses", February 2006

"Regulation of the US Banking Industry in the Aftermath of the Great Depression", Work in Progress, 2004

"Increasing the Marginal Utility Derived From An Economics Course Through Experiential Education", Work in Progress, 2004

"Betrayed by the FDIC? A Preliminary Examination of the D'Oench, Duhme Doctrine and Its Impact on the Potential Efficiency of Banks in the United States", 2001

#### Speaking Engagements

"How Outstanding Plaintiff Lawyers Build Their Case on Damages - and How Effective Defense Lawyers Can Destroy It", Obstetric Malpractice: Cutting-Edge Techniques for Bringing and Defending Perinatal Brain Injury Cases, national conference, continuing education seminar, Chicago, IL, November 9 - 11, 2009.

"Deposition of an Economist from the Witness' Viewpoint", Taking and Defending Effective Depositions in New York, continuing education seminar, New York, NY, March 12, 2009.

"The Role of the Economist in Assessing Damages for Defendants," with co-presenter Frank D. Tinari, Ph.D., GEICO, Huntington, NY, July 31, 2008.



**Kristin K. Kucsma, M.A.**

"Economic and Statistical Issues in Assessing Damages," with co-presenter Frank D. Tinari, Ph.D., LUM, DRASCO & POSITAN, Roseland, NJ, June 2, 2008.

"Economic Damages: Overlooked Elements in Personal Injury and Wrongful Death Cases", ATLA-NJ Women Attorney's Dinner Meeting, Mountainside, NJ, April 9, 2008.

### Trials, Arbitrations and Mediations

Giulio Lupo v. Pro Foods, LLC, Profoods Restaurant Supply, LLC, Schimenti Construction Company of New York, Inc., Schimenti Construction Company, LLC and Coppola Paving & Landscaping, Index # 107656/06, Supreme Court of the State of New York, County of New York, New York, New York, July 27, 2010.

Michele Sedeyn v. City of Paterson and City of Paterson Police Department, et al., Docket No. L-1053-08, Superior Court of New Jersey, Passaic County: Law Division - Civil Part, Paterson, New Jersey, August 12, 2010.

Allied Oil, LLC, et al. v. Mark Sinibaldi, O'Connor Davies Munns & Dobbins, LLP, Brian Flynn, CPA, et al., Docket No. SOM-L-437-07, Somerset County Courthouse, Somerset, New Jersey, June 15, 2010.

Michelle L. Ford v. Affinity Investment Services, LLC, Affinity Federal Credit Union, et al., FINRA Arbitration # 08-02782, Newark, New Jersey, May 14, 2010.

Michael Halik v. Bohdan Halibey, M.D. and Sussex County Medical Associates, Docket # L-577-05, Morris County Superior Court, Courthouse, Morris County: Law Division, Morristown, New Jersey, April 29, 2010.

Ricardo Marrero v. 541-142, LLC, Index # 22767/06, Supreme Court of the State of New York, County of Bronx, Southern District of New York, Bronx, New York, January 25, 2010.

Maria Almeida v. Jose V. Raimundo, Docket # MID-L-2819-06, Superior Court of New Jersey, Middlesex County: Law Division, New Brunswick, New Jersey, January 21, 2010.

Staton Family Investments v. Merrill Lynch Pierce Fenner & Smith, et al., Case # 08-04586, Arbitration, Financial Industry Regulation Authority, Boca Raton, Florida, January 20, 2010.

James Schmitt v. A.J.D. Construction Co. Inc., et al., Docket # ESX-L-4596-06, Superior Court of New Jersey, Newark, NJ, January 19, 2010.



**Kristin K. Kucsma, M.A.**

Susan Cole Muller v. Edward W. Chaloupka and Great Bay Marine, Inc., Index # 10624/07, Supreme Court of the State of New York, County of Suffolk, Riverhead, New York, January 15, 2010.

Franciszek Mazurski v. Heywood Realty, LLC (NYLLC) and Fortune Construction, Index # 27879/05 – KINGS, Supreme Court of the State of New York, County of Kings, Brooklyn, New York, December 15, 2009.

Robert Marcinkus and A&M Farm & Garden Center, Inc. v. Dynamex, et al., Docket # MER-L-1222-06, Mediation, Lawrenceville, NJ, November 16, 2009.

James Robert Zullo vs. Pramond K. Sharma, M.D., Docket # MID-L-6084-05, Superior Court of New Jersey, Bergen County, NJ, September 24, 2009.

Jie Li v. Triboro Coach, et al., Supreme Court, 11th Judicial District, Queens County, New York, July 27, 2009.

Patrick Bland v. Donald Winant, et als., Docket #: BER-L-8617-03, Superior Court of New Jersey, Bergen County, NJ, February 2, 2009.

Parisi v. Marriott International, et al., Supreme Court, New York, NY, November 3, 2008.

Moore v. Penney, Docket #: FM-20-01182-07F, Early Settlement Panel, Union County Courthouse, Elizabeth NJ, June 16 and 17, 2008.

John P. Gaffney v. Citigroup Global Markets, Inc., FINRA Arbitration # O6-03789, Newark, New Jersey, April 23, June 10 and June 11, 2008.


**Depositions**

Robert Carvajal  v. Donald Mihalek and Tom Rizza, Case # 07 cv 170, personal injury proceeding, New York, New York, opinion regarding loss of earnings, testimony taken in deposition, August 26, 2010.

Anthony J. Russo, Pro Se v. Vincenza Leonelli-Spina and ABC Corps 1-5, Docket No. HUD-L-181-09, legal malpractice proceeding, Livingston, New Jersey, opinion regarding loss of pension benefits, testimony taken in deposition, August 20, 2010.

Zacchary Heller v. Ronald Sanderson, M.D., Pediatric Orthopedic Associates, P.A., St. Peter's Medical Center, et al., Docket No. MID-L-527-09, personal injury proceeding, Livingston, New



**Kristin K. Kucsma, M.A.**

Jersey, opinion regarding loss of earnings and household services, testimony taken in deposition, July 8, 2010.

Karen Vazquez, an adult, by her Guardian Ad Litem, Isaias Vazquez, and Isaias Vazquez, individually v. Atul Patel, Mahesh Bhagat, Brian Canavan, et al., Docket No. MID-L-2992-07, personal injury proceeding, Livingston, New Jersey, opinion as to the loss of earnings, Social Security disability income, pension benefits, household services, care and helping services, and cost of lifetime care, testimony taken in deposition, June 21, 2010.

Thomas Juskus, Scott Furer and Robin Furer v. Amato Glasso, Esq., et al., Docket No. MRS-L-, employment law proceeding, Livingston, New Jersey, opinion as to the loss of earnings, net pension benefits, and compensation for excess taxes, testimony taken in deposition, June 8, 2010.

David Kalkstein and Suzanne F. Kalkstein v. A.J. Petrunis, Inc., Utica National Insurance Group, United Services Automobile Association, Hilbec Engineering & Geosciences, LLC, Ambrose Environmental Management, Inc., et al., Docket No. L1015-05, property loss proceeding, Cherry Hill, New Jersey, opinion as to peciniary damages, testimony taken in deposition, June 2, 2010.

Brent Beams v. Walmart Stores East, L.P., Case No. 3:09-CV-96,  employment law proceeding, Livingston, New Jersey, opinion as to the loss of earnings and compensation for excess taxes, testimony taken in deposition, April 21, 2010.

James Toll v. Sills Cummis & Gross, Docket No. ESX-L-8741-07, employment law proceeding, testimony taken in deposition, Livingston, New Jersey, opinion regarding loss figures contained in plaintiff's expert's report, testimony taken in deposition , April 20, 2010.

Montes v. Syed, et al., Docket No. MON-L-1454-08, wrongful death proceeding, Livingston, New Jersey, opinion as to net Social Security retirement income, loss of companionship services to spouse and children and loss of advice and counsel services to spouse and children, testimony taken in deposition, March 11, 2010.

Glenn Bloom v. Rock, et al., Index # 06 CV 6301 NRB, ECF case, commercial damage proceeding, New York, New York, opinion as to loss of royalty income and product equity, testimony taken in deposition, January 26, 2010.

Mary Teatzner, v. Herman L. Maeuser, M.D., Bruce Brener, M.D., et als, Docket # ESX-L-4514-07, wrongful death proceeding, Livingston, New Jersey, opinion as to loss of household services, companionship, and advice and counsel services, testimony taken in deposition, December 3, 2009.



## Kristin K. Kucsma, M.A.

Paul K. Caullett v. Park America of New Jersey, Inc., et als., Docket # MID-L-2276-07, personal injury proceeding, Livingston, New Jersey, opinion regarding loss figures contained in plaintiff's expert's report, testimony taken in deposition, October 13, 2009.

SAI Food Sensations v. TCBY Systems, LLC, Case No.: 13 114 01726 06, business loss proceeding, New York, New York, opinion as to lost profits, testimony taken in deposition, September 4, 2009.

John Bailey, Anthony Consolo and Joseph Ricciardi v. University of Medicine and Dentistry of New Jersey and Carmelo V. Huertas, Docket No. ESX-L-9570-06, employment law proceeding, Livingston, New Jersey, opinion as to the loss of earnings, testimony taken in deposition, September 2, 2009.

Liberty Mutual Ins. Co., et al. v. Viking Industrial Security, Inc., et al., Docket No.: SOM-L-525-07 and Viking Industrial Security, Inc., et al. v. Liberty Mutual Ins. Co., et al., Docket No.: SOM-L, business loss proceeding, Newark, New Jersey, opinion as to lost profits, testimony taken in deposition, July 8, 2009.

Oster v. Robert Wood Johnson University Hospital, et al., Docket # MID-L-4097-07, medical malpractice proceeding, Livingston, New Jersey, opinion as to the loss of income, educational expenses and services, testimony taken in deposition, May 18, 2009.

Ioannes Spiliotopoulos and Patricia Spiliotopoulos v. Harold G. Siemtsma, Jr., Docket # BER-L-6206-06, personal injury proceeding, Livingston, New Jersey, opinion as to the loss of earnings and services, testimony taken in deposition, January 5, 2009.

Walsh v. Chubb & Son, Docket # UNN-L-3945-06, employment law proceeding, Scotch Plains, New Jersey, opinion as to the loss of earnings, testimony taken in deposition, November 26, 2008.

James Robert Zullo vs. Pramod K. Sharma, M.D., Docket # MID-L-6084-05, medical malpractice proceeding, Livingston, New Jersey, opinion as to the loss of services, testimony taken in deposition, September 10, 2008.



## *QUALIFICATIONS PROFILE*

### FRANK D. TINARI

Principal Economist

TINARI ECONOMICS GROUP

220 South Orange Avenue - Suite 203

Livingston, NJ 07039

ftinari@TinariEconomics.com

phone: 973 / 992-1800  fax: -0023

New York office: 212 / 201-0938

www.TinariEconomics.com

### *Education*

B.S.    1964    Economics, Fordham College
M.A.    1966    Economics, Fordham University
Ph.D.    1976    Economics, Fordham University

### *Employment*

Professor Emeritus of Economics, Seton Hall University, South Orange, NJ, 2002-present.
   Professor, Associate Professor, Assistant Professor, Department of Economics, 1971-2002.
Founder and Principal Economist, Tinari Economics Group, 1979- present.
Instructor, Economics, US Army Finance School, Indianapolis, IN, 1968-1970.
Other part-time and adjunct positions at other institutions, 1968-2002.

### *Academic and Professional Activities*

Appointed to the New Jersey State Advisory Committee to the U.S. Commission on Civil Rights, April 2010-2012.
National Association of Forensic Economics:
   President, January 2005-January 2007.    Immediate Past President, 2007-08.
   President-Elect, 2004.    Chairman, Ethics Committee, 2001-2002.
   Vice-President, Eastern Region, 1998-2001.
Appointed as member representative, Southeast Morris Deanery, of the Diocesan Pastoral Council, Diocese of Paterson, October 1, 2009 (three-year term).
Mayor, Borough of Florham Park, New Jersey, 2004-2007.
Trustee, Legal Center for the Defense of Life, Inc., Morristown, NJ, since November 1, 2002.
Adjunct Faculty, Graduate Certificate in Forensic Economics Program, University of Missouri at St. Louis, 2002-2007.
Board member, Labor Law, Society of Litigation Economists, 2000-2003.
Member, Council of Academic Policy Advisors, New Jersey Legislature, 2000-2001.
Board of Trustees, The Adult School of the Chathams, Madison and Florham Park.
   Board Member Emeritus.  Member, September 1986 - June 1994.
   Developer and Chairman, Thomas Kean Community Lecture Program, 1990-1994.
   Board Chairman, June 1988 - June 1990; Vice-Chairman, June 1990 - June 1994.



**FRANK D. TINARI**

***Academic and Professional Activities*** (continued)

Invited guest lecturer, University of International Business and Economics,
    Beijing, People's Republic of China, 1983 and 1985.
Councilman, Borough of Florham Park, budget & finance portfolio, 1993-2003.
Vice-Chairman, Planning Board, Borough of Florham Park, 1979-1988.
Director, Division of Research, W. Paul Stillman School of Business, 1980-82.
Editorial reviewer: *Journal of Forensic Economics*, 1989-present. *Journal of Legal Economics*,
    1994-present. *Journal of Economic Education,* 1990-present, *Perspectives on Economic
    Education Research,* 2006-present.
Reviewer of grant proposals, Sea Grant Program, 1984-1989.
Reviewer of economics manuscripts for major textbook publishers, 1974-80.
Founder/Director, Faculty Seminar Series (1974-79), Faculty Working Paper Series (1975-80), W.
    Paul Stillman School of Business, Seton Hall University.

***Professional Memberships***

American Economic Association, 1964-present
National Association of Forensic Economics, 1987-present
Western Economic Association International, 1988-present
Eastern Economic Association, 1995-present
American Academy of Economic and Financial Experts, 1999-present

***Honors, Awards and Recognition***

Television interview for ET Now (Mumbai, India), at Thompson Reuters, New York, January 11, 2010.
Recognition listing for work with Trial Lawyer's Care on 911 Victim Compensation Fund , in "Trial
    Lawyers Doing Public Justice 2004", Trial Lawyers for Public Justice, 2004.
Recipient of "Past Presidents' Award for Outstanding Service to the Association," from National
    Association of Forensic Economics, January 3, 2003.
Televised appearance on ABC World News Tonight, January 20, 2002.
    Discussed September 11th Victims Compensation Fund.
Quoted on National Public Radio, January 18, 2002, regarding Victims Compensation Fund.
Recipient of Seton Hall University awards:  Merit Award, 1984-1990;  Dean's Award, W. Paul
    Stillman School of Business, 1984;   Faculty Achievement Award, 1978 and 1979.
National recipient, "Honorable Mention, College Level" Award from Joint Council on economic
    Education, for innovations in teaching of economics; 1979; 1980.
Awarded several research grants from various external agencies.
Faculty Administrative Internship, Consortium of East Jersey, 1976-77.
Commendation Medal, United States Army, September 1970.
***"Prize Winning Author for 1969" from Executive Council, Army Finance Association.***

2



# FRANK D. TINARI

*Journal and Book Publications*

"Assessing Economic Damages in Personal Injury and Wrongful Death Litigation: The State of New Jersey," co-authored with Kristin K. Kucsma, *Journal of Forensic Economics*, 21(2), June 2010, pp. 219-234.  http: / / www.JournalofForensicEconomics.com/doi/pdf/10.5085/jfe.21.2.219

"The Practice of Forensic Economics: An Introduction," *Eastern Economic Journal*, 36(3), Summer 2010, pp. 398-406.  Available at SSRN: http://ssrn.com/abstract=1633325 or doi:10.1057/eej.2010.29

"Companionship, Advice, and Counsel Services," co-authored with Kristin Kucsma, Section 640 of Chapter 6, The Value of Household Services, of *Determining Economic Damages*, by Gerald D. Martin, Ph.D., Costa Mesa, Ca: James Publishing, Inc., July 2008, pp. 6-7 - 6-11.

"The Role of the Forensic Economist in Nursing Malpractice Actions," Chapter 34 of *Nursing Malpractice*, 3rd Ed., Edited by Patricia W. Iyer & Barbara J. Levin. Tucson: Lawyers & Judges Publishing Co., Inc., 2007, pp. 1009-1019.  Earlier edition: Chapter 25 of *Nursing Malpractice*, 2nd Ed., Edited by Patricia W. Iyer. Lawyers & Judges Publishing Co., Inc., 2001, pp. 671-81.

"Estimates of Labor Productivity of Economic Damages Experts," co-authored with Elias Grivoyannis, *Journal of Forensic Economics*, 18(2-3), Fall 2005 (published July 2006), pp. 139-153.

"Did the 9/11 Victim Compensation Fund Accurately Assess Economic Losses?", co-authored with Kevin E. Cahill and Elias Grivoyannis, *Topics in Economic Analysis & Policy*, Vol. 6, Issue 1, January 2006, pp. 1-42.  ISSN 1538-0653, The B.E. Journals in Economic Analysis & Policy, http://www.bepress.com/bejeap/topics/vol6/iss1/art2.  (Through Nov. 5, 2009:  270 full-text downloads)

"A Note on 'Household Services: Toward a More Comprehensive Measurement," *Journal of Forensic Economics*, 17(3), Fall 2004 (published December 2005), pp. 383-385.

"Approaches to Damages Measurement in Employment Litigation: an Introduction," Special Issues Editor, *Journal of Forensic Economics*, 16(2), Spring/Summer 2003 (published September 2004), pp.151-152.

"Teaching Forensic Economics in the University Curriculum," co-authored with Frank     Slesnick, *Journal of Forensic Economics*, 14(3), 2001, pp. 243-260.

"Household Services: Toward A More Comprehensive Measure," *Journal of Forensic Economics*, 11(3), 1998, pp. 253-265.
- Reprinted in Journal of Life Care Planning, 8(1), pp. 43-55.
- Reprinted as Chapter 50 in Roger T. Kaufman, James D. Rodgers and Gerald D. Martin, *Economic Foundations of Injury and Death Damages*, Edward Elgar Publishing Ltd, 2005.
- Reprinted as: "Broadening the Measurement of Household Services in Wrongful Death Cases," Reading 19 in *Assessing Family Loss in Wrongful  Death Litigation: The Special Roles of Lost Services and Personal Consumption*, edited by Thomas R.   Ireland  and Thomas  O. Depperschmidt, Tucson, Az:  Lawyers & Judges Publishing Co., 1999.

"The Ethical Behavior of Academicians in Their Role as Experts in Litigation," Chapter 17, *Business Education and Training: Education and Value Conflict*, Vol. I, ed. by Samuel M. Natale & Mark B. Fenton, University Press of America, November 27, 1996.

"Do We Double-Count Damages in Severe Personal Injury Cases?" *Journal of Legal Economics*, Vol. 5, No. 2, Fall 1995, pp. 23-32.

"China's Economic Situation and the Status of Reform," *American Asian Review*, Vol. XIII, No. 3, Fall 1995, pp. 52-59.

"Work Rewards: Complementary and Conflicting Distributive Demands," in *Values, Work, Education: the Meanings of Work*, Editions Rodopi B.V., Netherlands, 1995, ed. by  Samuel M. Natale, Brian M. Rothschild, Joseph W. Sora.

3



## FRANK D. TINARI

***Journal and Book Publications*** (continued)

"Attorney Perspectives on the Use of Economic Experts: Survey Results," *Journal of Forensic Economics*, co-authored, Vol. VIII, No. 1, Winter 1995, pp. 13-23.

"The Socio-Economic Order and Forensic Economics," *International Journal of Social Economics*, Vol. 20, No. 8, 1993, pages 4-11.

"Competition for Forensic Economists and Their Ethical Behavior," *Journal of Forensic Economics*, Vol. VI, No. 3., Fall 1993, pages 263-269.

"Estimating Monetary Loss Due to Personal Injury," *Journal of Forensic Economics*, Vol. II, No. 2, April 1989, pages 75-78.

"Economic Reform in China: A Critical Turning Point," *The Journal of Social, Political and Economic Studies*, Vol. 14, No. 4, Winter 1989, pp. 443-452.

"Problems in Appraising the Economic Loss of a Child," *Journal of Forensic Economics*, Vol. II, No. 1, December 1988, pages 123-128.

*Economics: The Options For Dealing With Scarcity.*  Glenview, IL: Scott, Foresman and Company, 1986.  Preface, 492 pp., Glossary, Index.  (College textbook)

"On the Erosion of Public Facilities," with J.E. Fredland, *Review of Social Economy*, Vol. XXXVI, No. 1, April 1978, pp. 71-77.

***Other Publications***

"Cooperating on a New Idea: Avoiding Foreclosure Helps Both Lenders and Borrowers"co-authored with Dominick Mazzagetti, *The Washington Times*, p. 1, Feb. 16, 2010.

"Ban Mortgage-Backed Securities?" co-authored with Dominick Mazzagetti, *Newark Star-Ledger*, December 28, 2010.

"State's Housing Rules Ignore Needs of Immigrants," co-authored with Kristin Kucsma, *Daily Record*, Morris County, NJ, August 30, 2009. (Note: article title is what is available electronically; newsprint copy is titled: "COAH Rules Hurt Immigrants.")

White paper: Is Affordable Housing the Remedy to Perceived Discrimination Against Immigrants?, co-authored with Kristin Kucsma, prepared for the Community Forum on Immigration and Education Issues, convened by the New Jersey State Advisory Committee to the United States Commission on Civil Rights, May 2009.

"COAH Research is Full of Shortcomings," co-authored with Kristin Kucsma, *Newark Star-Ledger,* April 1, 2009.

"Preparing for the Next Wave of McMansions," co-authored with Robert Michaels, *New Jersey Municipalities*, Trenton, NJ, June 2008, pp. 30-35.

"Should Your Town Establish a Land Use Board?" co-authored with Robert C. Kirkpatrick, *New Jersey Municipalities*, Trenton, NJ, January 2008, pp. 14-17.

"Carefully Consider Merging Land Use Boards," *Daily Record*, Morris County, NJ, September 23, 2007.

"Making Prevailing Plaintiffs Whole," co-authored with Christopher W. Hager, Esq., Financial Planning Section, *New Jersey Law Journal*, November 15, 2004, pp. S8-S9, S15.

"One Mayor's View of State vs. Local Taxes," *New Jersey Municipalities*, November 2004, pp. 22-24.

4



## FRANK D. TINARI

***Other Publications***  (continued)

"What Accounts for the Big Differences in Damages Calculations for Death Cases in
   Pennsylvania and New Jersey?", *Question & Answer Book, The Legal Intelligencer*, July
   2003, pp. 16-17.
"In Employment Litigation, Stock Options are Real Money: The Expert's View," *New York
   Employment Law & Practice* (NY Law Jnl. Affiliate), Vol. 2, No. 7, April 2001, pp. 1-3.
"How to Keep Your Winning Clients from Getting Shortchanged by the Tax System," *New
   York Employment Law & Practice* (NY Law Jnl. Affiliate), Vol. 2, No. 5, Feb. 2001, pp. 6-7.
"Discipleship in the Marketplace: a Resource for Socially Responsible Investing and
   Purchasing," co-author of report as member of Commission on Justice and Peace,
   Archdiocese of Newark, NJ, 2001.
"Suited for Stock Options," *IT recruitingmag.com*, March-April 2000, pp. 170-171.
Book Review of *The New Hedonics Primer for Economists and Attorneys*, *Journal of Forensic
   Economics,* Vol. 12, No. 2, Spring/Summer 1999, pp. 159-160.
Book Review Essay: *The Dollar Value of a Day: 1997 Dollar Valuation, Journal of Legal
   Economics*, Vol. 8, No. 3, Winter 1998-99, pp. 93-99.
"Business Torts Litigation: Update 1999," handbook and cassettes, NJ Institute for Continuing
   Legal Education, co-author, 1999, 103 pages.
"Ethics in the Business School Curriculum," editor of special issue, *Mid-Atlantic Journal of Business*,
   Vol. 27, No. 1, March 1991.
"The Economic Expert for the Defense," *The Connecticut Law Tribune*, Vol. 12, No. 10,
   March 10, 1986, page 8.
"Role of Economist in Negligence and Other Cases Involving Economic Loss," *New Jersey
   Law Journal*, Vol. CXI, No. 25, June 23, 1983.
"The Advantages of Home Ownership," *Washington Post*, June 16, 1973.
"Estimating the Real Income of the Army Officer," with J.E. Fredland, *Army Finance Journal*,
   January-February 1971.

***Speaking Engagements, Seminars and Presentations***

**Inns of Court**:
   • "Economic Damages: Issues in the Use of an Expert Witness," Mercer County American Inn of
     Court, Trenton, NJ, May 12, 2010.
   • Mock Trial Examination of a Damages Expert Economist, Worrall F. Mountain Inn of Court, Morris
     County, Morristown, NJ, January 25, 2010.
   • "Role Playing in Mock Deposition of an Expert Economist," Hudson County Inn of Court, Jersey
     City, NJ, January 8, 2008.
   • "How to Effectively Use a Forensic Economist," Worrall F. Mountain Inn of Court, Morris County,
     Morristown, NJ, October 15, 2007.
   • "Cross-Examining the Expert Economist," Hudson County Inn of Court, Jersey City, NJ,
     February 10, 2003.
   • "Issues in the Use of Experts," Arthur T. Vanderbilt Inn of Court, Essex County, East
     Hanover, NJ, May 20, 2002.



**FRANK D. TINARI**

***Speaking Engagements, Seminars and Presentations*** (continued)

**Inns of Court (continued)**
- Essex Inns of Court, Justice William J. Brennan, Jr. Chapter, Newark, NJ, Jan.10, 2000.
- Worrall F. Mountain Inn of Court, Morris County, NJ, November 22, 1999.
- Arthur T. Vanderbilt Inn of Court, Essex County, East Hanover, NJ, May 24, 1999.
- "Ethics in the Use of Experts," Arthur T. Vanderbilt Inn of Court, Essex County, Roseland, NJ, April 28, 1997.
- "The Expert Economist," Worrall F. Mountain Inn of Court, Morris County, Pupilage Group VI, Morristown, NJ, May 10, 1993.

**National Employment Lawyers Association**
- Panelist, "Presenting Damages at Trial," **NELA-NJ** Conference, Iselin, NJ, October 17, 2008.
- Guest Speaker, "How to Use an Economist to Prove Damages in an Employment Discrimination Case," **New York**, NYC, May 24, 2006.  (CLE    credit granted; program videotaped)
- Invited Speaker, "Use of an Economic Expert in Employment Law Litigation," **NELA Regional Conference**, New York, Yale Club of New York City, November 4, 2000.

**NJ Institute for Continuing Legal Education (CLE)**
- Panel Speaker, "Litigating a Wrongful Death Case," New Brunswick, NJ, 4/14/07 (audiotaped)
- Panel Speaker, "Litigating the Employment Discrimination Case," Mt. Laurel, NJ, April 1, 2006. (audiotaped)
- "Mock Trial of an Employment Discrimination Case" panelist/mock trial witness, New Brunswick, NJ, July 30, 2003. (videotaped)
- "Valuing Employment Cases" panelist, Fairfield, NJ, October 26, 2002. (videotaped)
- "Calculating Damages in Employment Litigation" in *Litigating the Employment Discrimination Case* seminar, New Brunswick, NJ, January 19, 2002. (videotaped)
- Panelist, "Business Torts Litigation," New Brunswick, NJ, July 30, 1999.
- "Proving Economic Damages," Fairfield, NJ, December 16, 1995, January 6 and 20, 1996.
- "Experts by Experts," New Brunswick, NJ, January 1993.

**Trial Lawyers Associations**
- Panelist, "Economic and Vocational Experts: What You Need to Know and What You Can Expect". **New York State Trial Lawyers Institute**, NYC, September 14 &21, 2009. (Program videotaped.)
- Talk using sample cases, "Direct & Cross Examination of the Economist", *Wrongful Death 2005*, **New York State Trial Lawyers Institute**, NYC, June 10, 2005. (Program videotaped.)
- Panel Speaker, "Economic Damages Roundtable: Overlooked Elements in Wrongful Death Cases," **ATLA-NJ Boardwalk Seminar 2003**, Atlantic City, 4-25-03.  (Program audiotaped.)



## FRANK D. TINARI

*Speaking Engagements, Seminars and Presentations* (continued)

**Trial Lawyers Associations (continued)**
- Speaker, "Employment Law: Using Experts on Liability & Damages," **ATLA-NJ Boardwalk Seminar 2003**, Atlantic City, April 25, 2003. (Program audiotaped.)
- Speaker, "Economic Damages Issues in Employment Cases," **ATLA-NJ Educational Foundation**, Boardwalk Seminar 2002, Atlantic City, NJ, April 26, 2002.
- Speaker, "Economic Losses Resulting from Injuries," in *Developing Damages* program, **ATLA-NJ Educational Foundation**, Edison, NJ, Nov. 3, 2001.
- Invited Mock Trial Expert Witness, "Employment Law Forum," **ATLA-NJ Boardwalk Seminar 2001**, Atlantic City, April 27, 2001. (Program audiotaped.)
- Speaker on Employment Law damages, **ATLA-NJ Educ. Foundation**, Edison, NJ, 10-30-99.
- Panelist on damages in a death case, **ATLA-NJ Educ. Foundation**, Edison, NJ, 12-6-1997.
- Participated as expert witness in mock-trial seminar, **New York State Trial Lawyers Institute**, NYC, October 9, 1996.

**In-house Seminars**
- "The Role of the Economist in Assessing Damages for Defendants," with co-presenter Kristin Kucsma, M.A., GEICO INSURANCE, Westbury, NY, July 31, 2008.
- "Economic & Statistical Issues in Assessing Damages," with co-presenter Kristin Kucsma, M.A., LUM DRASCO & POSITAN, Roseland, NJ, June 2, 2008.
- "The Role of the Economist in Assessing Damages," LIBERTY MUTUAL INSURANCE, Marlton, NJ, March 18, 2005.
- "Effects of Different Assumptions on Damages Calculations," BRAFF HARRIS & SUKONECK, Livingston, NJ, March 28, 2000.
- "Ten Points Regarding the Use of an Expert Witness Economist in Litigation," PORZIO, BROMBERG & NEWMAN, Morristown, NJ, March 9, 2000.

**Other Talks, Seminars and Presentations**

"Presenting Damages at Trial: One Expert's Perspective," presented at the annual conference, American Academy of Economic and Financial Experts, Las Vegas, April 9, 2010.

"The Practice of Forensic Economics: an Introduction," presented at NAFE session, Eastern Economic Association Annual Conference, Philadelphia, February 27, 2010.

Guest speaker on "The Role of the Economist in the Courtroom" at meeting of the Summit Area Old Guard (retired professionals), New Providence, NJ, January 12, 2010.

Guest lecture on "Proving Damages through an Economist" at meeting of the Columbian Lawyers Association of Brooklyn, October 6, 2009.

Guest speaker on "Excelling at Your Direct Examination: Preparing Counsel to Ask You the Right Questions" at 18th Annual National Expert Witness Conference, SEAK, Hyannis, Ma., June 26, 2009.

Panel speaker: "Is Affordable Housing the Remedy to Perceived Discrimination Against Immigrants?" at the Community Forum on Immigration and Education Issues, sponsored by the New Jersey State Advisory Committee to the **United States Commission on Civil Rights**, Trenton, NJ, May 8, 2009.



**FRANK D. TINARI**

*Speaking Engagements, Seminars and Presentations* (continued)

**Other Talks, Seminars and Presentations** (continued)

Guest speaker panelist on "Direct Examination of Forensic Economist: Guidelines and Case Study of Injured Woman," at *Seminar on Proving Damages at Trial*, **NYS Academy of Trial Lawyers**, June 18, 2009, Brooklyn, NY. Also: June 3, 2009, Albany, NY; April 1, 2009, New York City; March 31, 2009, Plainview, NY. (CLE credits granted; some programs recorded.)

Paper presentation, "Assessing Economic Damages in Personal Injury and Wrongful Death Litigation: the State of New York," NAFE session, Eastern Economic Association Annual Conference, New York, February 27, 2009.

Discussant of Smith, Smith & Uhl, "Estimating the Value of Family Household Management Services: Approaches and Markups," NAFE session, Eastern Economic Association Annual Conference, New York, February 28, 2009.

Guest lecturer, "The Nature of Economics," Mater Ecclesiae College, Greenville, RI, Oct. 25, 2008.

Speaker, "Taking and Defending Effective Depositions in New York," Lorman Education Services, New York, NY, March 27, 2008. (CLE credits granted; program audiotaped.)

Guest speaker, "Core Concepts of the Market Economy," Seminary of the Legionaries of Christ, Thornwood, New York, March 13, 2008.

Panel speaker, "Making Dollars & Cents of Your Employment Case: Evaluating & Litigating Damage Exposure," **New York City Bar Center for Continuing Legal Education**, New York, NY, May 9, 2007. (CLE credits granted; program videotaped.)

Speaker, "Taking and Defending Effective Depositions," Lorman Education Services, New York, NY, March 27, 2007. (CLE credits granted; program audiotaped)

Panel speaker, "New York Jets Training Facility and Corporate Headquarters: a Model Public-Private Partnership," CORENET GLOBAL program, Park Avenue Club, Florham Park, NJ, November 9, 2006.

Paper presentation, "Assessing Economic Damages in Personal Injury and Wrongful Death Litigation: the State of New Jersey," Annual Conference, ASSA, NAFE session, Boston, 1/7/06.

Talk: "What is Forensic Economics?", presented at the Fordham University Graduate Economics Department Alumni Lecture Series, New York, November 29, 2005.

Paper presentation: "The Efficiency of the 9/11 Victim's Compensation Fund Formula in Awarding Economic Damages," presented at The Second International Summer Conference of the National Association of Forensic Economics, Dublin, Ireland, May 27, 2005.

Talk: "Florham Park: Commercial and Infrastructure Projects, 2004-05," Morris County Economic Development Corporation Meeting, Morristown, NJ, April 28, 2005.

Paper presentation, "Does the New Jersey Unisex Life Expectancy Table Alleviate or Promote Gender Discrimination?", with Kevin E. Cahill, Annual Conference, Eastern Economic Association, New York, March 4, 2005.



# FRANK D. TINARI

*Speaking Engagements, Seminars and Presentations* (continued)

**Other Talks, Seminars and Presentations** (continued)

Paper presentation,"Statistical Examination of the 9/11 Victim Compensations Fund Awards:
Calculated vs. Actual Economic Awards" with Kevin Cahill and Elias Grivoyanis,
Annual Conference, ASSA, NAFE session, Philadelphia, January 8, 2005.

Panel speaker, "Reflections on Damages Calculations for Victim Compensation Fund Claimants,"
National Association of Forensic Economics, Western Economic Association International,
Vancouver, July 2, 2004.

Roundtable participant, "A Comparison of U.S. and U.K. Personal Injury and Wrongful Death
Damages Analysis in Litigation," NAFE session, Annual Conference, Western Economic
Association International, Vancouver, Canada, July 2, 2004.

Talk, "Report on My Experience Using VCF Tables for Calculation of Economic Loss," National
Association of Forensic Economics International Conf., Edinburgh, Scotland, May 27, 2004.

Paper presentation, "Future Pension Gains are Treated as Losses in New York: a Note on a
Perverse Result under New York State's Rule 50-A/50-B," Annual Conference, Southern
Economic Association, NAFE session, San Antonio, November 23, 2003.

Speaker, "Damages in New Jersey Civil Trial Practice," National Business Institute, Saddle
Brook, NJ, September 12, 2003.  (CLE credit granted; program audiotaped)

Speaker, Trial Lawyers Care Tele-Conference, "Economic Damages under the Victim Compensation
Fund," Newark, NJ, February 11, 2003.

Roundtable Panelist, "Valuation of Time Spent in Companionship, Care & Society," National
Association of Forensic Economics, Winter Conf., St. Thomas, U.S. Virgin Islands, 1-31-03.

Lecture, "The Economic Impact of 9/11", South Orange Public Library, January 23, 2003.

Paper presentation, "Productivity of Forensic Damages Experts", Annual Conference, ASSA,
NAFE session, Washington, DC, January 3, 2003.

Roundtable Speaker, "The Structure, Content and Presentation of Reports," National Association
of Forensic Economics, Western Economic Association International, Seattle, July 2, 2002.

Roundtable Panelist, "Ethics Symposium: a Discussion of the Proposed New Statement of
Ethical Principles," National Association of Forensic Economics, Western Economic
Association International, Seattle, June 30, 2002.

Panel Speaker, "Issues in Calculating Economic Losses," **Trial Lawyers Care Volunteer
Training Seminar,** Atlantic City, NJ, April 26, 2002.

Paper presentation, "The Use of Forensic Economics in the Undergraduate Curriculum," with
Frank Slesnick, Annual Conference, Eastern Economic Association, Boston, March 16, 2002.

Invited luncheon speaker, "The Victims Compensation Fund: Adequate and Fair?", *Disaster
Recovery Conference*, Foundation for Accounting Education, Yale Club, NYC, Feb. 5, 2002.

Paper presentation, "The Market for Damages Experts: Preliminary Results of a National
Survey," Winter Conference, NAFE, Cancun, Mexico, February 2, 2002.



9

**FRANK D. TINARI**

*Speaking Engagements, Seminars and Presentations* (continued)

**Other Talks, Seminars and Presentations** (continued)

Speaker, "Comments on Deficiencies in Economic Regulations of Victim Compensation
Fund," Victims' Families of 9/11 Rally, New York City Armory, January 17, 2002.
Paper presentation, "Does the Victim Compensation Fund Shortchange Victims' Families?",
Annual Conference, ASSA, NAFE sessions, Atlanta, Georgia, January 4, 2002.
Invited Expert Witness, "Mini-Trial of a Handicap Discrimination Case," **Essex County Bar
Fndtn.,** Annual Spring Program, Labor & Employment Law Comm., Livingston, NJ, 6/7/01.
Invited Mock Trial Expert Witness, "The Trial and Defense of a Million Dollar Employment
Law Case," **Touro College Jacob D. Fuchsberg Law Center and National Employment
Lawyers Association/NY,** Huntington, NY, May 17, 2001. (Program videotaped.)
Invited Speaker on damages issues in employment litigation, **American Arbitration Asso-
ciation,** Employment Arbitration panel, NYC, May 10, 2001.
Invited speaker, Seminar on Expert Witnesses, Seton Hall Law School, Newark, October 16, 2000.
Invited Panelist, "Preparing Damages in Employment Litigation," **Essex County Bar
Foundation,** Labor and Employment Law Committee, West Orange, NJ, Sept. 13, 2000.
Invited speaker, "Key Points Regarding the Use of an Expert Witness Economist in
Litigation," Seton Hall University Law School, October 14, 1998.
Invited speaker and mock-trial expert witness, "The 1996 Defense Counsel Trial Academy,"
**International Association of Defense Counsel,** Boulder, CO, July 25-26, 1996. More than 100 young
attorneys nationwide attended the academy.
"Use of Economic Experts to Calculate Lost Wages and Benefits," presented at **NJSBA Labor
& Employment Law Section,** Fourth Annual Symposium, June 13, 1990.

*Consulting*
Expert testimony at over 800 trials, arbitration hearings and oral depositions. Numerous economic loss
evaluations for use in litigation regarding economic damages: earnings, household services, guidance,
companionship, employment discrimination, lost profits, commercial damages, breach of contract,
defamation, divorce, and punitive damages.

Detailed listing of trial and deposition testimony may be found at www.TinariEconomics.com

rev. 7/1/10



# National Association of Forensic Economics
### P.O. Box 394
### Mount Union, PA 17066

*Journal of Forensic Economics*

(866) 370-6233
(814) 542-3253 FAX

nancy@nafe.net
http://nafe.net

## Statement of Ethical Principles and
## Principles of Professional Practice
## National Association of Forensic Economics (NAFE)
### (Effective October 1, 2004)

When providing expert opinion for use as evidence by the trier of fact, a NAFE member pledges, as a condition of membership, adherence to the following:

**1. Engagement**
Practitioners of forensic economics should decline involvement in any litigation when they are asked to assume invalid representations of fact or alter their methodologies without foundation or compelling analytical reason.

**2. Compensation**
Practitioners of forensic economics should not accept contingency fee arrangements, or fee amounts associated with the size of a court award or out-of-court settlement.

**3. Diligence**
Practitioners of forensic economics should employ generally accepted and/or theoretically sound economic methodologies based on reliable economic data. Practitioners of forensic economics should attempt to provide accurate, fair and reasonable expert opinions, recognizing that it is not the responsibility of the practitioner to verify the accuracy or completeness of the case-specific information that has been provided.

**4. Disclosure**
Practitioners of forensic economics should stand ready to provide sufficient detail to allow replication of all numerical calculations, with reasonable effort, by other competent forensic economics experts, and be prepared to provide sufficient disclosure of sources of information and assumptions underpinning their opinions to make them understandable to others.

**5. Consistency**
While it is recognized that practitioners of forensic economics may be given a different assignment when engaged on behalf of the plaintiff than when engaged on behalf of the defense, for any given assignment, the basic assumptions, sources, and methods should not change regardless of the party who engages the expert to perform the assignment. There should be no change in methodology for purposes of favoring any party's claim. This requirement of consistency is not meant to preclude methodological changes as new knowledge evolves, nor is it meant to preclude performing requested calculations based upon a hypothetical--as long as its hypothetical nature is clearly disclosed in the expert's report and testimony.

**6. Knowledge**
Practitioners of forensic economics should strive to maintain a current knowledge base of their discipline.

**7. Discourse**
Open, uninhibited discussion is a desired educational feature of academic and professional forensic economic conferences. Therefore, to preserve and protect the educational environment, practitioners of forensic economics will refrain from the citation of oral remarks made in an educational environment, without permission from the speaker.

**8. Responsibility**
Practitioners of forensic economics are encouraged to make known the existence of, and their adherence to, these principles to those retaining them to perform economic analyses and to other participants in litigation. In addition, it is appropriate for practitioners of forensic economics to offer criticisms of breaches of these principles.

**President**
*Frank D. Tinari*
Seton Hall University

**President Elect**
*Gary R. Skoog*
Legal Econometrics, Inc.

**Executive Director**
*George A. Schieren*
Appalachian State University

**Vice Presidents**
*Christopher J. Bruce*
University of Calgary

*Kurt V. Krueger*
John O. Ward & Associates

**Editors, *Journal of Forensic Economics***
*Michael J. Piette*
Analytical Economics, Inc.

*Lawrence M. Spizman*
SUNY-Oswego

*Edward Foster*
University of Minnesota

*Steven J. Shapiro*
University of New Haven

**At Large Vice Presidents**
*Elizabeth A.W. Gunderson*
Hamline University

*Steven J. Shapiro*
University of New Haven

**Editor Emeritus**
*John O. Ward*
University of Missouri-Kansas City

