**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ X
VIOLET FRYER, :
:
                        Plaintiff, : Case No. 09 Civ. 9514 (WHP)
:
      v. :
:
OMNICOM GROUP INC.; OMD USA LLC; and :
MICHAEL ATKIN, in his individual and official :
capacities, :
:
                     Defendants. :
:
------------------------------------------------------------------ X

## DECLARATION OF GREGORY N. FILOSA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT AND FOR SANCTIONS

GREGORY N. FILOSA, an attorney admitted to practice before this Court, hereby declares and states under penalty of perjury, that:

1. I am a member of the bar of this Court and am associated with the law firm of Thompson Wigdor & Gilly LLP ("TWG"). We are counsel for Plaintiff Violet Fryer ("Plaintiff" or "Ms. Fryer") in the above-captioned action against Defendants Omnicom Group Inc., OMD USA LLC ("OMD") and Michael Atkin (collectively, "Defendants").

2. I submit this Declaration with the exhibits attached hereto in opposition to Defendants' Motion to Dismiss the Amended Complaint and for Sanctions.

3. At no point did I -- or anyone else from TWG -- engage in any scheme to extract an inflated or exorbitant settlement as alleged by Defendants in the instant motion. As Plaintiff's opposition papers make clear, Plaintiff's settlement position has always been based on our assessment of the claim and Ms. Fryer's desire to be made whole for Defendants' unlawful termination of her employment.

**Pre- and Post-Complaint Settlement Discussions**

4. In July and August 2009, Andrew Goodstadt -- formerly a partner with TWG -- and I engaged in settlement discussions regarding Ms. Fryer's potential claims with OMD's in-house attorney. In these settlement discussions, Ms. Fryer's initial settlement demand was $350,000.

5. OMD's in-house counsel countered with an offer of 26 weeks of salary (approximately $53,500), representing an increase of 4 weeks above the 22 weeks of salary continuation that OMD had initially offered Ms. Fryer under the Settlement Agreement and General Release provided to her on the date of her termination.

6. In response, Ms. Fryer lowered her settlement demand to $250,000.

7. OMD then increased their settlement offer by an additional 4 weeks of salary continuation (to 30 weeks total, or approximately $62,000).

8. The parties did not discuss settlement again until March 1, 2010 when, in connection with the parties' Rule 26(f) conference, TWG reiterated Plaintiff's opening settlement demand of $350,000. Defendants, now represented by their current outside counsel, did not respond to Ms. Fryer's settlement proposal.

**Ms. Fryer's Initial Production of Job Search Documents**

9. On June 2, 2010, Ms. Fryer produced documents responsive to Defendants' first document requests, which included, *inter alia*, copies of all documents concerning her efforts to obtain employment following the termination of her employment with OMD in June 2009.

10. On August 3, 2010, Defendants' counsel raised certain concerns regarding Plaintiff's production of documents concerning her job search efforts while she was still employed by OMD. *See* August 3, 2010 Letter from S. Franco to A. Goodstadt, attached hereto as <u>Exhibit A</u>.

11. Similarly, on August 12, 2010, Defendants' counsel raised, via e-mail, additional concerns regarding Ms. Fryer's communications with a former co-worker. *See* August 12, 2010 E-mail from S. Franco to G. Filosa, attached hereto as Exhibit B.

12. On September 7, 2010, Plaintiff responded to those issues raised by Defendants and produced additional documents responsive to those requests. *See* September 7, 2010 Letter from G. Filosa to S. Franco, attached hereto as Exhibit C.

13. Following service of the economic damages report on September 27, 2010, Defendants requested that Plaintiff produce those documents relied upon and referenced by the economic damages expert in their report. Plaintiff produced these documents (which included copies of Ms. Fryer's responses to the expert's standard questionnaire as well as her prior year's tax returns) to Defendants on October 5, 2010 and October 12, 2010 respectively.

14. At no point prior to October 27, 2010 did Defendants request that Ms. Fryer supplement her production of documents concerning her ongoing job search efforts.

**Plaintiff's September 22, 2010 Economic Damages Report**

15. On July 16, 2010, Ms. Fryer notified the Court that she had retained Frank Tinari, Ph.D. of Tinari Economics Group to calculate the projected economic damages that she would have suffered as a result of Defendants' unlawful actions.

16. Pursuant to the Court's July 19, 2010 Revised Scheduling Order, Plaintiff's expert report was due on September 7, 2010, but at the request of Plaintiff, this deadline was extended to September 27, 2010.

17. Concerned about seeking a second extension of the expert report deadline, I elected to serve the expert report notwithstanding Ms. Fryer's acceptance of a job offer with Kraft and undertook to obtain a revised report once she commenced work and received income from Kraft.

18. On September 27, 2010, I served Defendants with a copy of Dr. Tinari's expert report. *See* September 27, 2010 E-mail from G. Filosa to S. Franco enclosing the expert report, attached hereto as <u>Exhibit D</u>.

**Ms. Fryer's October 7, 2010 Deposition**

19. On September 7, 2010, Defendants' counsel inquired as to Ms. Fryer's availability for a deposition to be held on either October 6 or October 7. *See* September 7, 2010 E-mail from S. Franco to G. Filosa, attached hereto as <u>Exhibit E</u>.

20. Less than a week later, I confirmed that Ms. Fryer was available on October 7, 2010. *See* September 13, 2010 E-mail from G. Filosa to S. Franco, attached hereto as <u>Exhibit F</u>.

21. The first day of Ms. Fryer's deposition was held on October 7, 2010, pursuant to notice stating that such deposition would "continue from day to day until completed." *See* October 1, 2010 Deposition Notice to V. Fryer, attached hereto as <u>Exhibit G</u>. The complete transcript of the first day of Ms. Fryer's deposition is attached hereto as <u>Exhibit H</u>.

22. The second day of Ms. Fryer's deposition was held on March 11, 2011. The complete transcript of the second day of Ms. Fryer's deposition is attached hereto as <u>Exhibit I</u>.

23. Following the first day of Ms. Fryer's deposition, Defendants neither provided an errata sheet for the first day of her deposition, nor requested that Ms. Fryer review the transcript of Day One to complete an errata sheet and/or sign her partial deposition.

**Settlement Discussions Immediately Following Day One of Plaintiff's Deposition**

24. On October 12, 2010, Mr. Cohen contacted me to discuss settlement, offering to settle Ms. Fryer's lawsuit for $60,000 -- approximately the same amount that OMD had offered Ms. Fryer in August 2009 prior to the filing of the Complaint.

25. In response, Ms. Fryer lowered her demand to $250,000 -- which was slightly less than the wages that Ms. Fryer had lost since her termination, plus attorneys' fees and costs which

she incurred in pursuing this litigation -- which I represented to Mr. Cohen to be Ms. Fryer's bottom line number for resolving this dispute.

26. A few days later, Mr. Cohen contacted me and offered to settle the lawsuit for $90,000. Ms. Fryer rejected this offer and reiterated that her bottom line, "make whole" demand was $250,000, however, I did indicate to Mr. Cohen that Ms. Fryer may be inclined to accept slightly less than this amount were Defendants to offer it.

27. On or about October 20, 2010, Mr. Cohen contacted me and offered to settle this lawsuit for $125,000. Ms Fryer again rejected this offer and I reiterated to Mr. Cohen that Ms. Fryer's bottom line "make whole" settlement demand. When I conveyed Ms. Fryer's rejection of Defendants' latest offer, Mr. Cohen raised the prospect of mediation. In response, I advised Mr. Cohen that I did not believe that mediation would be cost-effective given the experience of the parties in negotiating settlements of these cases and the relatively narrow gap in their positions. Mr. Cohen advised me that he would discuss this with his clients and get back to me, but I never heard back.

28. On October 27, 2010, Mr. Cohen contacted me by e-mail to advise me that he had learned that Ms. Fryer had began working at Kraft and requested that Ms. Fryer supplement her production of all documents relating to her employment with Kraft. In response, I advised Mr. Cohen that Ms. Fryer was already in the process of collecting this information and would supplement her production accordingly. *See* October 27, 2010 e-mail from G. Filosa to G. Cohen, attached hereto as Exhibit J.

29. On the same day, Mr. Cohen contacted me by telephone and inquired as to whether Ms. Fryer would revise her settlement demand in light of her subsequent employment. During this conversation, I confirmed to Mr. Cohen that Ms. Fryer had indeed obtained subsequent employment and that her salary exceeded the salary that she had been paid at OMD.

30. The following day, I advised Mr. Cohen that Ms. Fryer's settlement position had not changed in light of her employment with Kraft.

**Plaintiff's Supplemental Production of Documents Concerning Her Job Search Efforts**

31. On November 11, 2010, Plaintiff produced documents pertaining to her job search efforts since her June 2, 2010 production. *See* November 11, 2010 Letter from M. Hendler to S. Franco, attached hereto as Exhibit K.

32. On November 16, 2010, Plaintiff produced documents pertaining to the salary and benefits that she had been receiving from her employment with Kraft. *See* November 16, 2010 Letter from M. Hendler to S. Franco, attached hereto as Exhibit L.

33. On November 19, 2010, Defendants requested that Plaintiff produce seven categories of documents concerning her employment with Kraft and her efforts to obtain employment with UM by December 10, 2010. *See* November 19, 2010 Letter from S. Franco to G. Filosa, attached hereto as Exhibit M.

34. On December 13, 2010, Ms. Fryer produced documents responsive to Defendants' November 19, 2010 request. *See* December 13, 2010 Letter from G. Filosa to S. Franco, attached hereto as Exhibit N.

35. On December 3, 2010, Ms. Fryer served Defendants with the revised expert report prepared by Tinari Economics Group. *See* December 3, 2010 Letter from G. Filosa to S. Franco, enclosing the revised expert report, attached hereto as Exhibit O.

Dated: April 22, 2011
New York, New York /s/ Gregory N. Filosa
Gregory N. Filosa